## BERTHA MURCHISON *v.* SKINNER PRECISION INDUSTRIES, INC., ET AL.

HOUSE, C. J., COTTER, THIM, SHAPIRO and LOISELLE, Js.

Argued November 3, 1971—decided January 4, 1972

*Paul J. McQuillan,* with whom, on the brief, was *Frederick W. O'Dell,* for the appellant (plaintiff).

*Edward S. Pomeranz,* with whom, on the brief, was *Douglas L. Drayton,* for the appellees (defendants).

SHAPIRO, J.  The plaintiff, the appellant herein, received an award from the workmen's compensation commissioner from which the defendants, the appellees herein, appealed to the Superior Court. The appeal was sustained and from a judgment rendered thereon the plaintiff has appealed to this court.  She has assigned error, claiming that the court erred in failing to review the transcript of all the testimony heard by the commissioner before reaching a conclusion that there was no evidence of repetitive trauma as found by the commissioner; in erroneously applying the law by finding that direct medical testimony was required to show a causal connection between her employment and the injury; and in failing to remand the case to the commissioner for further proceedings.

The material facts found by the commissioner are as follows:  The plaintiff Bertha Murchison, for five to six years prior to and into part of 1967, had been employed primarily as a machine operator by the defendant Skinner Precision Industries, Inc. Following a change in her work methods her work procedure consisted of taking a small metal piece from racks stacked to her left, performing an operation on it, then removing the piece and placing it in

a rack to her right. She did this while seated and with her legs straddling the base of the machine. The complete operational cycle began with the plaintiff twisting her body to the left to pick up the piece, turning back to the machine in front of her, turning to the right to place the piece in a rack and then making a full twist to her left to begin the sequence over again. When a rack containing the pieces needed replacing, she did this from her seated position by reaching out, lifting the rack and placing it in another area. Each rack, when loaded with the work material, weighed twenty to twenty-five pounds.

Prior to the change in her work methods, the plaintiff worked while standing or sitting. After the change in her work methods, she performed her work only while in a sitting position. At various times during the eight-hour work day she would leave her machine because of discomfort in sitting in one position for long periods of time. She complained to the foreman that the work position was uncomfortable and that her back bothered her. He provided her with another type of chair but she preferred the one she had been using.

During the latter part of August, 1967, she noticed a numbness and pain in her left leg which had developed gradually after her work methods were revised by her employer. The numbness and pain increased until, finally, she sought medical assistance from her family physician, who referred her to an orthopedic surgeon. The latter, Maxwell E. Hagedorn, diagnosed her condition as "herniated lumbar discs, L4, L5 and L5, S1, right." He first prescribed conservative treatment. On December 7, 1967, the plaintiff orally notified her employer's nurse that she had pain in her back, that she had seen a doctor and that

she might have a disc condition. She informed her foreman that she was going to the hospital for her back problem. Thereafter, Hagedorn performed surgery to alleviate the plaintiff's condition.

On these facts, the commissioner concluded that the "repetitive twisting from one side to the other and back again was the cause of the claimant's personal injury, which required corrective surgery," citing *Garofola* v. *Yale & Towne Mfg. Co.,* 131 Conn. 572, 574, 41 A.2d 451; that since "the repetitive trauma . . . progressively increased the injury over a period of several months, the effective date of the injury" was November 27, 1967, when the "claimant" left her employment; and that the "claimant received the injury to her back on or before November 29, 1967; it arose out of and in the course of her employment" and that she was to receive compensation benefits. These conclusions must stand unless they could not reasonably or logically be reached on the subordinate facts. They "must be tested by the subordinate facts and must stand unless . . . [they] resulted from an incorrect application of law to them or because of an inference illogically or unreasonably drawn from them. *D'Angelo* v. *Connecticut Light & Power Co.,* 146 Conn. 505, 508, 152 A.2d 636; *DiLauro* v. *Bassetti,* 133 Conn. 642, 644, 53 A.2d 512." *Metall* v. *Aluminum Co. of America,* 154 Conn. 48, 52, 221 A.2d 260.

On July 9, 1969, the defendants appealed from the commissioner's award. On November 4, 1969, the defendants filed a motion seeking to correct the award which was denied by the commissioner on January 27, 1970. The defendants filed their reasons of appeal on February 4, 1970, which, in addition to claiming error in the refusal by the commissioner to correct the award, included claims that he erred

because the award was not supported by the subordinate facts or warranted by the evidence; that there was no evidence that the plaintiff had sustained an accidental injury definitely located as to time and place of occurrence, nor was there evidence that the plaintiff had sustained an injury causally connected with her employment and as the direct result of repetitive trauma or acts incident to such employment; that he erred in not dismissing the claim because the only medical evidence was to the effect that the plaintiff's injury did not arise out of and in the course of her employment; and that the claim should have been dismissed, since, by the law and the evidence, that was the only reasonable, legal and logical conclusion that was warranted. As stated earlier, the court sustained the defendants' appeal. The plaintiff has assigned error on three grounds which we shall discuss.

The first assignment of error involves the claim that the court erred in failing to review the transcript of all the evidence heard at the commissioner's hearing held on May 21, 1969, before concluding that there was no evidence of repetitive trauma as found by the commissioner. At the outset, a recital of the sequence of events is necessary. After the commissioner made his finding and award for the plaintiff, the defendants appealed to the Superior Court and the defendants filed with the commissioner their motion, together with portions of the evidence certified by him, seeking correction of his finding and award. The commissioner denied the motion. On August 26, 1970, the court sustained the defendants' appeal and, accordingly, judgment was rendered on that date. On September 15, 1970, the plaintiff appealed to this court. On November 18, 1970, she filed a motion with the Superior Court to rectify the

record on appeal "by adding thereto a copy of the complete transcript of the formal hearing held on this matter before the Workmen's Compensation Commissioner . . . on May 21, 1969 . . . . Said transcript is necessary to present correctly the questions of law decided by the court as to which error is assigned." The motion was granted on November 27, 1970. The record fails to show that any proceeding took place other than what we have just recited.

In an appeal to the Superior Court from a finding and an award made by a workmen's compensation commissioner, the relevant portion of Practice Book § 438 requires that where an appellant seeks to correct the commissioner's finding and award he must file "such portions of the evidence as he deems relevant and material to the corrections asked for." Practice Book § 439 requires that "[t]he appellee should, if he deems that additional evidence is relevant and material to the motion [to correct the finding], within one week after the appellant has filed his transcript of evidence, so notify the commissioner, and at the earliest time he can procure it file with the commissioner such additional evidence." This court has held that "[t]he appellant must file with the commissioner, with his motion, or at the earliest time he can procure the transcript, such portions of the evidence as are relevant and material to the several corrections asked for. If the appellee claims that additional evidence is relevant and material to the corrections asked for, he should, within one week after appellant has filed his transcript, or at the earliest time he can procure the transcript, file with the commissioner such additional evidence." *Atwood* v. *Connecticut Light & Power Co.,* 95 Conn. 669, 673, 112 A. 269; see *Kenyon* v. *Swift Service Corporation,* 121 Conn. 274, 278, 184 A. 643. Practice

Book § 435 provides, in part, that "[s]uch appeals are heard by the court upon the certified copy of the record filed by the commissioner. The court does not retry the facts nor hear evidence. It considers no evidence other than that certified to it by the commissioner." As was pointed out in *Atwood* v. *Connecticut Light & Power Co.*, supra, 674, "[t]he Superior Court determines the errors so assigned, upon the evidence certified to it by the commissioner. It cannot consider other evidence in passing upon such errors."

We point out that there is nothing in the record to show, nor is the claim made, that the plaintiff ever sought to have the court consider the entire testimony presented to the commissioner but rather presents it, the first time, for our attention on her motion to rectify the record on appeal. No attempt was made to open the judgment rendered so that the entire transcript would come to the trial court for examination by it. The plaintiff, in her brief, argues that "in order to protect her substantial rights in an appellate review of finding and award by the Commissioner, the Superior Court should have reviewed the transcript of the evidence." The plaintiff never sought to have the trial court review the complete transcript, nor was an opportunity afforded it to do so. In order, however, to avoid any injustice to the parties, we have examined the complete transcript and find that even if the trial court had considered it in its entirety there would be no error, since it correctly determined that the conclusion of the commissioner was based on a mistake as a matter of law.

The plaintiff also claims that the trial court erroneously applied the law by finding that medical testimony was necessary to show a causal connection between her employment and injury. Section 31-275

of chapter 568 of the General Statutes defines an injury claimed to be compensable under the Workmen's Compensation Act.[1]   The plaintiff contends that the commissioner, in making his award, properly relied on *Garofola* v. *Yale & Towne Mfg. Co.*, 131 Conn. 572, 41 A.2d 451.   In that case, the compensation commissioner found (pp. 573–74) that the plaintiff, who was employed as a molder, two or three hours after starting his work, felt a pain in his back which continued; that it was a low back sprain; and that due to it he later quit his employment.   This court, at pages 574–75, held that expert evidence of a reasonably probable connection between the plaintiff's work and his low back sprain was not necessary and that the commissioner could have concluded, even in the absence of expert testimony, that it was more likely that the sprain occurred from the heavy work in which the plaintiff was engaged than that it occurred from some unknown cause; and that an injury that is sudden, unusual and unexpected is nonetheless accidental because it is incurred in the course of the employee's ordinary work.   The facts, however, surrounding the occurrence of the injury in the *Garofola* case are clearly distinguishable from those before us.

In this case, the commissioner had before him testimony of the plaintiff indicating that after she returned from vacation in the latter part of August, 1967, there was a change in the work method on her

[1] "[General Statutes] Sec. 31-275. DEFINITIONS.   Terms in this chapter are defined as follows: . . . 'Personal injury,' or 'injury,' as the same is used in this chapter, shall be construed to include, in addition to accidental injury which may be definitely located as to the time when and the place where the accident occurred, an injury to an employee which is causally connected with his employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease as herein defined."

job; that where the work method previously had consisted of lifting while standing or sitting, it now required her to do the lifting while in a sitting position; that she performed this operation while seated with her legs straddling the machine base; that the complete operational cycle began with twisting her body to the left to pick up the product, turning back to the machine in front of her, then turning to the right to place the product in a rack and then making a full twist to the left to begin the sequence again; that when a rack was filled, she would reach over while seated, lift it and place it on the other side; that each rack, when filled, weighed twenty to twenty-five pounds; and that with the change in the method of performing her work, following her return from vacation, she began to have increasing discomfort in her toes, legs and low back. She also testified that Hagedorn, a physician, told her that her condition was caused over a period of two or three months and that it was caused by the continual movement of lifting, turning or twisting. At the hearing before the commissioner, however, the defendants introduced into evidence the discharge summary dictated by Hagedorn at the New Britain General Hospital, where he performed surgery on the plaintiff on January 2, 1968. A portion of it recites that the plaintiff "had been seen in the office during the preceding few months because of this pain [in the left lumbar area and extending into her left leg]. The pain came on without any known incident as far as the patient was concerned. She states that at her place of work she has always done heavy lifting, but no special incident could be recalled."

At the hearing before the commissioner, the plaintiff's counsel stated that he thought that Hagedorn "ought to be brought in" as a witness. The

record discloses that he did not testify before the commissioner, although his report of December 5, 1967, and his certificate of January 16, 1968, as the plaintiff's attending physician, were introduced into evidence. His report of December 5, 1967, showed a long history of low back pain going back to a childhood fall and included his impression of the existence of a probable degenerative lumbosacral disc and disc protrusion. In the foregoing certificate, the physician indicated that the plaintiff's condition was not due to injury or sickness arising out of her employment. The burden of proving that the injury to the plaintiff arose in the course of and out of her employment was on the plaintiff. *D'Angelo* v. *Connecticut Light & Power Co.,* 146 Conn. 505, 507, 152 A.2d 636; *Nagyfy* v. *Miller's Stratford Provision Co.,* 145 Conn. 726, 139 A.2d 604; *Triano* v. *United States Rubber Co.,* 144 Conn. 393, 396, 132 A.2d 570. Such proof must be established by competent evidence. *Labbe* v. *American Brass Co.,* 132 Conn. 606, 612, 46 A.2d 339; *Saunders* v. *New England Collapsible Tube Co.,* 95 Conn. 40, 42, 110 A. 538.

The Workmen's Compensation Act makes compensable an internal injury, such as a strain, as well as an external injury directly visible to the eye. *Jones* v. *Hamden,* 129 Conn. 532, 534, 29 A.2d 772. "Neither type of injury, however, is compensable unless it arose out of the employment. The plaintiff's problem of proof was obviously likely to be more difficult as a practical matter, in this case, involving a claimed internal injury, than in a case involving an obvious and visible, and therefore practically indisputable, external injury." *Triano* v. *United States Rubber Co.,* supra, 398. In a case dealing with a disease that could have been caused by coal dust while working in coal mines related to

prior employment, where there was no medical testimony to show that the disease arose out of that plaintiff's employment with the defendant company, this court held: "Where, as here, it is difficult to ascertain whether or not the disease arose out of the employment, it is necessary to rely on expert medical opinion. Unless the medical testimony by itself establishes a causal relation, or unless it establishes a causal relation when it is considered along with other evidence, the commissioner cannot conclude that the disease arose out of the employment. *Madore* v. *New Departure Mfg. Co.,* 104 Conn. 709, 714, 134 A. 259." *Metall* v. *Aluminum Co. of America,* 154 Conn. 48, 52, 221 A.2d 260.

The plaintiff argues in her brief that the commissioner had the opportunity to observe her, to listen to the testimony, to see her demonstrate the method of operation used on the job, and to evaluate the evidence in the context of all the evidence before him; that it was his function and responsibility to accord such weight to the evidence as he deemed it deserved; that it rested with him to determine to what extent to believe her statements; and that the commissioner obviously gave full credit to the plaintiff's statements and made his findings accordingly. Under the facts in this case, this was not sufficient to sustain the plaintiff's burden of proof. In the absence of direct medical testimony, the commissioner resorted to speculation and surmise in concluding that the plaintiff's injury arose out of and in the course of her employment. The court correctly applied the law by finding that medical testimony was necessary to show a causal connection between her employment and injury.

The final claim is made that the court erred in failing to remand the case to the commissioner for

further proceedings in reference to medical testimony. An examination of the record fails to disclose that, as required by Practice Book § 652, this question was ever raised in the Superior Court or that it arose subsequent to the trial.[2] This, in itself, is sufficient reason to disregard this claim. The plaintiff never sought a remand and the court below was never called on to rule on it. In addition, the plaintiff points to nothing before us whereby she claims to have shown that it appears reasonable to suppose that on further proceedings she may be able to establish her right to compensation. See *Kearns* v. *Torrington*, 119 Conn. 522, 531, 177 A. 725; *Glodenis* v. *American Brass Co.*, 118 Conn. 29, 34, 170 A. 146. The test is, does it appear "reasonable to believe" that the plaintiff can prove a case; *Glodenis* v. *American Brass Co.*, supra; or is there a "reasonable prospect" that she can. *Jones* v. *Hamden*, supra, 535. The plaintiff has failed to demonstrate that if the case were remanded by the trial court to the commissioner that it appears reasonable to believe that she can prove her case or that there is a reasonable prospect of doing it. We find no merit to this final claim.

There is no error.

In this opinion the other judges concurred.

---

[2] Practice Book § 652 states: "This court shall not be bound to consider any errors on an appeal unless they are specifically assigned and unless it appears on the record that the question was distinctly raised at the trial and was ruled upon and decided by the court adversely to the appellant's claim, or that it arose subsequent to the trial."