ROBERT SIMMONS *v.* PHILIP BONHOTEL
(14729)

Heiman, Schaller and Stoughton, Js.

Argued October 24, 1995—decision released February 6, 1996

*David C. Leard,* for the appellant (plaintiff).

*Richard T. Stabnick,* for the appellee (defendant).

HEIMAN, J. The plaintiff appeals from the decision of the compensation review board of the workers' compensation commission (review board). The review board affirmed the finding and award of dismissal by the workers' compensation commissioner for the fifth district (commissioner). On appeal, the plaintiff claims that the review board should have vacated the commissioner's finding and award of dismissal because the commissioner improperly (1) allowed evidence of horseplay, (2) denied the plaintiff's motion to correct, and (3) allowed two continuances of the formal hearing. We affirm the decision of the review board.

The commissioner set out the following relevant facts and procedural history of the case. In 1990, and for approximately four years prior thereto, the plaintiff was employed by the defendant as a lawn maintenance worker. On February 14, 1991, the plaintiff filed a notice of claim with the workers' compensation commission for the fifth district, alleging that on August 30, 1990, while at work, he injured his back as a result of being sprayed with water. On March 14, 1991, the defendant

received the notice of claim. On March 26, 1991, the defendant sent notice to the workers' compensation commission regarding the alleged injury. In his notice, the defendant stated that he was not present at the time of the alleged injury and suggested that the plaintiff had a preexisting condition.

The commissioner held formal hearings regarding the plaintiff's claim on January 11, 1993, April 13, 1993, and May 27, 1993. The commissioner heard the following testimony at the hearings. The plaintiff testified that on August 30, 1990, he was working for the defendant at a private estate in Sharon with two other employees of the defendant. The plaintiff identified one of the two employees as the defendant's son, Philip Bonhotel.[1] Although the plaintiff could not identify the second employee present on that day, the plaintiff testified that Patrick Parmalee, another employee of the defendant, was not the second employee. Furthermore, the plaintiff testified that the defendant was on vacation on that day. The plaintiff testified that while he was driving a tractor in the course of his employment on August 30, 1990, he was sprayed with cold water from a hose held by one of the two employees. The plaintiff claimed that as a result of being sprayed with the cold water, he was caused to suddenly "jilt" or jump off the seat of the tractor. According to the plaintiff, this was the first time that he had ever been sprayed, and he did not know why he was sprayed. The plaintiff asserted, however, that he always encountered problems with the two "kids," meaning the two coworkers. The plaintiff claimed that a few days after he was sprayed, he noticed pain in his back. The plaintiff testified that he did not report the injury to the defendant because the defendant was on vacation. On cross-examination, however, the plaintiff admitted that he never reported the injury to

---

[1] The defendant and the defendant's son have the same name. We hereinafter refer to Bonhotel, Sr., as the defendant and to Bonhotel, Jr., as Bonhotel.

the defendant, but that his mother did report the injury in early September. The plaintiff continued to perform his regular work until approximately November 19, 1990, when he went to the Sharon Hospital emergency room because the pain started to radiate down his leg.

The medical evidence relating to the plaintiff's claim was as follows. The plaintiff was initially treated by Joseph Hajek, a physician. Hajek diagnosed the plaintiff with a herniated disc in the lower back at the level of L4-L5, and opined, on the basis of the plaintiff's history, that the plaintiff sustained this injury as a result of the incident at work on August 30, 1990. The plaintiff was later referred to another physician, Arnold Rossi, who performed a right L4-L5 disc operation on the plaintiff on April 29, 1991. Rossi determined, on the basis of the plaintiff's history, that it was within the realm of medical probability that the plaintiff's disc rupture was solely related to the injury at work in August, 1990. Rossi's initial evaluation report, however, recited that the plaintiff had a history of having slipped on wet grass, resulting in the onset of low back pain radiating to the plaintiff's right buttock, and that the plaintiff reinjured his back raking leaves in September. The plaintiff denied giving Rossi such a history.

The commissioner also heard testimony from Bonhotel. Bonhotel testified that on August 30, 1990, he was on vacation with his parents in Maine and had been on vacation for most of August. Bonhotel testified that he did spray the plaintiff with water, but that the incident occurred in mid-July. According to Bonhotel, the other employee present at the mid-July spraying incident was Parmalee. Bonhotel claimed that prior to his spraying the plaintiff with water, the plaintiff had sprayed him and Parmalee with water. Bonhotel also asserted that other spraying incidents had occurred on the job. Furthermore, Bonhotel testified that Parmalee went on vacation at the end of July and that, subsequent to

Parmalee's departure, there were no "young boys" employed by the defendant.

The commissioner also heard testimony from Parmalee. Parmalee testified that he was present when Bonhotel sprayed the plaintiff with water, and that the plaintiff had initiated the spraying. According to Parmalee, such spraying occurred all the time. Parmalee further testified that he left the defendant's employ as of July 28, 1990, and that on August 30, 1990, he was in school.

The commissioner filed his finding and award of dismissal on July 6, 1993.[2] On the basis of the evidence before him, the commissioner found that the plaintiff did not sustain an injury on August 30, 1990, as alleged in his notice of claim, but that he was involved in an incident in mid-July, 1990, where he initiated the spraying of water, constituting horseplay.[3] The commissioner

---

[2] During the course of the proceedings, the plaintiff filed a motion to preclude the defendant from contesting the compensability of the claim, pursuant to General Statutes (Rev. to 1989) § 31-297 (b). That section requires the defendant to file a disclaimer that sets forth the grounds on which the defendant contests the compensability of the plaintiff's claim. If the defendant does not timely file a legally sufficient disclaimer, then he is precluded from contesting the compensability of the claim. General Statutes (Rev. to 1989) § 31-297 (b). On July 6, 1993, the commissioner also filed his decision denying the plaintiff's motion to preclude. The plaintiff does not claim that the commissioner improperly denied the motion to preclude; see, e.g., *Pereira* v. *State*, 228 Conn. 535, 541–42, 637 A.2d 392 (1994); and, therefore, we do not review that ruling. The plaintiff's claims regarding the defendant's presentation of horseplay evidence in defense of the action address the propriety of the commissioner's conduct in his role as fact finder. The claims are evidentiary, and we, therefore, treat them as such.

[3] Generally, injuries resulting from horseplay or skylarking by employees are not compensable under the Workers' Compensation Act. See *Shedlock* v. *Cudahy Packing Co.*, 134 Conn. 672, 676, 60 A.2d 514 (1948). Although it is subject to a variety of exceptions, this general rule is most aptly stated in *Mascika* v. *Connecticut Tool & Engineering Co.*, 109 Conn. 473, 477, 147 A. 11 (1929): "[W]here an employee indulges in horseplay with his fellow employees during the hours of his employment with resulting injury to himself, his injuries cannot be deemed to have had any causal connection with his employment. In such case he has voluntarily departed from the

concluded, therefore, that the plaintiff failed to prove that he sustained an injury to his back that arose out of and in the course of his employment with the defendant. On the basis of these conclusions, the commissioner dismissed the plaintiff's claim.[4] On appeal, the review board affirmed the finding of the commissioner. This appeal followed.

## I

The plaintiff claims that the commissioner improperly allowed the defendant to present evidence of horseplay, and, therefore, the review board should have reversed the finding of the commissioner. The plaintiff asserts that the commissioner admitted evidence of horseplay improperly (1) because the defendant did not raise the defense of horseplay in the "pleadings" and (2) because the proffered evidence concerned horseplay incidents that took place prior to the alleged date of injury.[5] The specific evidence that the plaintiff claims should not have been admitted is the testimony of Bonhotel and Parmalee concerning their involvement in water spraying incidents with the plaintiff, and the testimony of the plaintiff concerning his lack of involvement in water spraying incidents prior to August 30, 1990.[6] We do not agree.

duties of this employment and embarked upon an enterprise of his own not contemplated by the terms of his employment. His injuries result from his own act and from a condition brought about by himself and not incident to his employment. They have their origin in a risk which he has himself created and which has no causal connection with his employment."

[4] The commissioner, however, fined the defendant $1000 for failing to secure workers' compensation insurance.

[5] Although the plaintiff raises these two issues separately in his brief, we combine them here because they are essentially two arguments in support of one claim, that is, that the commissioner improperly admitted evidence of horseplay.

[6] As we indicated, the plaintiff testified that he had never been involved in a water spraying incident prior to August 30, 1990. The plaintiff claims in his brief, however, that the commissioner improperly allowed the defendant's counsel to *question* the plaintiff about his involvement in water spray-

This claim is controlled by General Statutes (Rev. to 1991) § 31-298, which governs the conduct of the commissioner at a workers' compensation hearing: "[N]o formal pleadings shall be required, beyond any informal notices as the commission approves. In all cases and hearings under the provisions of this chapter, the commissioner shall proceed, so far as possible, in accordance with the rules of equity. He shall not be bound by the ordinary common law or statutory rules of evidence or procedure, but shall make inquiry in such manner, through oral testimony or written and printed records, as is best calculated to ascertain the substantial rights of the parties and carry out justly the spirit of this chapter. . . ." See *Delgaizo* v. *Veeder-Root, Inc.*, 133 Conn. 664, 667–68, 54 A.2d 262 (1947); *Nicotra* v. *Bigelow, Sanford Carpet Co.*, 122 Conn. 353, 360, 189 A. 603 (1937).

The plaintiff specifically claimed that he was injured as a result of being sprayed with water by two coworkers on August 30, 1990. He testified that he was sprayed by two "kids." The plaintiff identified one of the two youths as Bonhotel, and was unable to identify the second youth, potentially leaving Bonhotel as the only witness to the occurrence. Thus, the plaintiff raised the issue of horseplay and water spraying, and contended that such water spraying involved Bonhotel and another youngster. In order properly and equitably to determine the cause of the plaintiff's injury, the commissioner was therefore obligated to allow both Bonhotel and the plaintiff to testify about water spraying incidents that may have taken place during the summer of 1990. Bonhotel identified Parmalee as another young person who worked with the plaintiff during the summer, and it was therefore entirely reasonable for the commissioner to allow Parmalee to testify. Both Bonhotel and Par-

ing incidents prior to the alleged date of injury. The plaintiff makes this claim despite the fact that when the plaintiff answered the question, he denied being involved in prior water spraying incidents.

malee testified that they were not working with the plaintiff on August 30, 1990, the date of the alleged water spraying incident, but that they were able to identify previous water spraying incidents involving the plaintiff, including an incident that took place in July, 1990. The plaintiff denied having been involved in water spraying incidents prior to August 30, 1990. If the commissioner had declined to allow the testimony of the plaintiff, Bonhotel and Parmalee regarding water spraying incidents that may have involved the plaintiff during the summer of 1990, the summer of the alleged injury, then he would have failed in his duty to ascertain the true cause and nature of the plaintiff's injury in accordance with § 31-298. Indeed, after hearing from all of the witnesses, the commissioner determined that the water spraying incident in issue took place in July, 1990, not on August 30, 1990, as the plaintiff had claimed, and that the plaintiff had initiated the water spraying, constituting horseplay. Thus, the commissioner fulfilled his duty to conduct the hearing in an equitable manner. The plaintiff's claim is, therefore, without merit.

II

The plaintiff next claims that the commissioner improperly denied his motion to correct, and, therefore, the review board should have ordered the commissioner to correct the finding. By his motion to correct, the plaintiff sought to have the commissioner add certain facts to his finding. The plaintiff posits that the commissioner was required to add these facts to his finding because the facts were undisputed. We do not agree.

The commissioner made his finding and award of dismissal on July 6, 1993. The commissioner set forth various procedural and factual events relevant to his decision. On July 13, 1993, the plaintiff filed a motion to correct the commissioner's finding. In his motion to

correct, the plaintiff sought to have the commissioner add to his finding several procedural and historical aspects of the case, including the dates of two informal hearings, the date of a pretrial hearing, the date of a notice to all parties from the commissioner regarding an upcoming formal hearing, the names of witnesses who testified at the January 11, 1993 formal hearing, and the commissioner's decision to continue the January 11, 1993 formal hearing to allow additional witnesses to testify. The commissioner denied the motion on July 14, 1993.

We will not change the finding of the commissioner " 'unless the record discloses that the finding includes facts found without evidence or fails to include *material* facts which are admitted or undisputed.' *Wheat* v. *Red Star Express Lines*, 156 Conn. 245, 248, 240 A.2d 859 (1968). 'It [is] the commissioner's function to find the facts and determine the credibility of witnesses . . . and a fact is not admitted or undisputed merely because it is uncontradicted.' . . . Id., 249. A *material* fact is one that will affect the outcome of the case. See *Tutsky* v. *YMCA of Greenwich*, 28 Conn. App. 536, 540, 612 A.2d 1222 (1992)." (Emphasis added.) *Tovish* v. *Gerber Electronics*, 32 Conn. App. 595, 599, 630 A.2d 136 (1993), appeal dismissed, 229 Conn. 587, 642 A.2d 721 (1994) (certification improvidently granted).

The commissioner's determination that the proposed facts were not material to his finding was an exercise of his discretion. Id., 601. We conclude that the commissioner did not abuse his discretion in making this determination. Even if the proposed facts were added to the commissioner's finding, they would not have been material to his final conclusion that the plaintiff's injury did not arise out of and in the course of employment. The commissioner's final conclusion was based on the testimony of the witnesses and the medical evidence,

not on the procedural history of the case. Therefore, the review board properly concluded that the finding did not require correction because, even if it were corrected as the plaintiff had requested, the commissioner's ultimate conclusion would not have changed. Id., 599.

## III

The plaintiff's last claim is that the review board should have determined that the commissioner improperly allowed two continuances of the formal hearing. The plaintiff claims that the commissioner's continuances of the hearing were each an abuse of his discretion. We do not agree.

The commissioner held the first formal hearing regarding the plaintiff's claim on January 11, 1993. At the conclusion of the January 11, 1993 hearing, the commissioner advised the parties that the hearing would be continued in order to allow additional witnesses to testify, particularly the plaintiff's coworkers. Evidence was taken on April 3, 1993, and May 27, 1993. The additional witnesses included Bonhotel and Parmalee.

In a workers' compensation case, the commissioner is required to hold a hearing on the matter after giving sufficient notice to the parties. General Statutes § 31-297. As we have noted in this opinion, the commissioner must proceed in an equitable fashion, and "make inquiry in such manner, through oral testimony . . . as is best calculated to ascertain the substantial rights of the parties . . . ." General Statutes (Rev. to 1991) § 31-298. Furthermore, "procedural due process is a requirement of adjudicative administrative hearings, including those held before [workers'] compensation commissioners"; *Balkus* v. *Terry Steam Turbine Co.*, 167 Conn. 170, 177, 355 A.2d 227 (1974); and "no matter shall be decided unless the parties have fair notice that it will be pre-

sented in sufficient time to prepare themselves upon the issue." *Osterlund* v. *State*, 129 Conn. 591, 596, 30 A.2d 393 (1943).

Because the plaintiff claimed that he was sprayed with water by two coworkers, and because the commissioner gave the plaintiff ample notice that the hearing would be continued in order to hear the testimony of coworkers who may have taken part in a water spraying incident with the plaintiff during the summer of 1990, the commissioner's decision to continue the hearing was in accordance with his duties to determine equitably the rights of the parties and to afford due process to the parties. We therefore conclude that the review board correctly determined that the commissioner properly continued the hearing in order to hear additional testimony.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.