## AGNES MULROY *v.* BECTON DICKINSON COMPANY ET AL.
### (AC 16407)

Foti, Landau and Hennessy, Js.

Argued December 1, 1997—officially released May 26, 1998

*Dean M. Cordiano*, with whom were *Peter R. Knight* and, on the brief, *Matthew J. Becker*, for the appellants (defendants).

*Richard L. Gross*, for the appellee (plaintiff).

LANDAU, J. The defendants, Becton Dickinson Company and Travelers Insurance Company, appeal from the decision of the workers' compensation review board affirming the finding and award of compensation by the workers' compensation commissioner to the plaintiff, Agnes Mulroy.

On appeal, the defendants claim that the commissioner improperly (1) awarded compensation to Mulroy because the record lacked sufficient evidence to support the finding that her injuries were caused by exposure to chemicals in the workplace, (2) relied on the opinion of Michael Grey, a physician, because his testimony did not meet the proper standard for scientific testimony as enunciated by our Supreme Court in *State v. Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), (3) refused to allow cross-examination as to the resignation of Wesley Jordan from Becton Dickinson and (4) denied their motion to correct several factual findings and the award. We affirm the decision of the board.

The commissioner found the following facts. Mulroy was employed at Becton Dickinson's plant in Canaan from October, 1979, until December, 1990, when she was diagnosed with distal symmetric sensimotor polyneuropathy. Becton Dickinson manufactures plastic syringes and labware. Mulroy worked in several departments throughout her eleven years at the plant, including the molding department and the marking, assembly and packaging (MAP) department.

Prior to working in the molding department, Mulroy was in excellent health and led an active athletic life. Soon after her transfer to that department, she began to exhibit symptoms of weight and hair loss, fatigue, pain in her hands and arms, dizziness, loss of coordination and nasal infection. While employed in the molding department, Mulroy was exposed to a volatile liquid chemical solvent, known as 1-1-1 trichloroethane (TCA), a hydrocarbon solvent known to be neurotoxic and to cause peripheral neuropathy.

In 1986, when Mulroy transferred to the MAP department, she used a multichemical liquid solvent known as 304 solvent, which contains chemicals also known to cause peripheral neuropathy. The MAP department was located adjacent to the sterilization department. Mulroy was also exposed to ethylene oxide (ETO), a volatile neurotoxic gas, which was used in the sterilization process and emitted into the air.

The defendants do not dispute the fact that Mulroy is stricken with distal symmetric sensimotor polyneuropathy. The defendants, however, do dispute the commissioner's conclusion that the injury resulted from exposure to neurotoxic chemicals in the workplace. The defendants claim that Mulroy never used TCA, was never exposed to ETO and her injury was solely the result of Charcot-Marie Tooth II Disease (CMT II). The defendants stress that Grey was the only physician to diagnose Mulroy's condition as work related. The defendants appeal from the board's decision sustaining the commissioner's findings.

We first note our standard of review. The commissioner has the power and the duty to determine the facts. *Fair* v. *People's Savings Bank*, 207 Conn. 535, 539, 542 A.2d 1118 (1988). "The review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is [obligated] to hear the appeal on the record and not 'retry the facts.' " Id.,

538–39. The board must determine whether there was "any evidence" in the record to support the commissioner's findings. *Adzima* v. *UAC/Norden Division,* 177 Conn. 107, 118, 411 A.2d 924 (1979). The role of this court "is to determine whether the review [board's] decision results 'from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them.' " *Aurora* v. *Miami Plumbing & Heating, Inc.,* 6 Conn. App. 45, 47, 502 A.2d 952 (1986).

I

The defendants first claim that the commissioner improperly awarded compensation to Mulroy because the record lacked sufficient evidence to support the finding that her injuries were caused by exposure to chemicals in the workplace. We disagree.

Grey is a specialist in occupational and environmental medicine at the University of Connecticut Medical Center in Farmington. He is certified by the American Board of Occupational Medicine, and he has been published in the field. Grey began treating Mulroy in 1991 and testified that her injuries were the direct result of her exposure to the chemicals in the workplace.

James Donaldson, a physician specializing in neurological problems in pregnant women, testified as an independent medical examiner. Donaldson stated that the plaintiff's injuries were solely the result of having CMT II. Although Grey thought it unlikely that the plaintiff had CMT II, he did not dispute the possibility that she might have that condition. Grey concluded, however, that if the plaintiff had CMT II, the conditions in the workplace exacerbated the dormant and asymptomatic state of the disease.

Where it is difficult to determine whether circumstances in the workplace caused an injury, it is necessary to rely on expert medical testimony. *Murchison*

v. *Skinner Precision Industries, Inc.*, 162 Conn. 142, 152, 291 A.2d 743 (1972). The defendants' argument that the commissioner should have accepted the testimony of Donaldson rather than that of Grey is a factual determination properly within the province of the commissioner. *Adzima* v. *UAC/Norden Division*, supra, 177 Conn. 118. This determination cannot be overruled by the board unless it could not find "any evidence" to support the conclusion. Id. The findings of the commissioner were clearly supported by the testimony of Grey. Therefore, the board properly upheld the factual determinations of the commissioner.

## II

The defendants next argue that our Supreme Court's decision in *State* v. *Porter*, supra, 241 Conn. 57, compels reversal of the board's decision.[1] The defendants argue that *Porter* requires the use of the *Daubert* standard to examine the methodology underlying expert scientific testimony to determine its validity in workers' compensation cases.[2] We disagree.

In *Porter*, our Supreme Court adopted the standard announced in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), which set forth specific requirements for the admissibility of scientific testimony. The *Daubert* standard is a rule of admissibility now applicable to scientific testimony sought to be introduced in our state

---

[1] This court ordered the parties to file simultaneous supplemental briefs on the impact of *State* v. *Porter*, supra, 241 Conn. 57, on this case.

[2] The defendants also argue, in their supplemental brief, that, aside from the requirements of *Porter*, appellate courts generally scrutinize the reasoning underlying the opinions of experts to determine whether the opinions constitute sufficient evidence to support the commissioner's findings. While we do not rule that this is a separate and distinct claim, but may merely be a subsidiary claim, assuming that it is a separate and distinct claim, we decline to review it because it was raised for the first time in the supplemental brief when we had not ordered supplemental briefing on that issue.

courts. The *Daubert* standard replaced the *Frye* test, which previously provided the standard for the admissibility of scientific testimony. See *Frye* v. *United States*, 293 F. 1013 (D.C. Cir. 1923).

In the workers' compensation arena, formal pleadings are not required. The commissioner is to proceed "in accordance with the rules of equity" and is not "bound by the ordinary common law or statutory rules of evidence or procedure . . . ." General Statutes § 31-298. This court has remained "mindful of the remedial purposes of the Workers' Compensation Act and that it should be broadly construed to accomplish its humanitarian purpose. . . . *Hansen* v. *Gordon*, [221 Conn. 29, 32, 602 A.2d 560 (1992)], quoting *Adzima* v. *UAC/ Norden Division*, [supra, 177 Conn. 117]; see also *Ash* v. *New Milford*, 207 Conn. 665, 672, 541 A.2d 1233 (1988)." (Internal quotation marks omitted.) *Epps* v. *Beiersdorf, Inc.*, 41 Conn. App. 430, 433, 675 A.2d 1377 (1996). " 'The purpose of the work[ers'] compensation law has always been to provide compensation for an injury arising out of and in the course of the employment regardless of fault, and the statutes are to be broadly construed to effectuate that purpose. . . . The underlying objective is to provide for the work[er] and those dependent on h[er].' . . . *Klapproth* v. *Turner*, 156 Conn. 276, 279, 240 A.2d 886 (1968)." *Tufaro* v. *Pepperidge Farm, Inc.*, 24 Conn. App. 234, 238, 587 A.2d 1044 (1991). "The purpose of the Work[ers'] Compensation Act is to provide a prompt, efficient, simple and inexpensive procedure for obtaining benefits related to employment. 82 Am. Jur. [2d 208] Workmen's Compensation § 441 (1976)." *Middletown* v. *Local 1073*, 1 Conn. App. 58, 65, 467 A.2d 1258 (1983), cert. dismissed, 192 Conn. 803, 471 A.2d 244 (1984). Our Supreme Court has also acknowledged "the principle that one purpose of work[ers'] compensation is to avoid litigation, delay and expense. See *Powers* v. *Hotel Bond Co.*, 89 Conn. 143,

146, 147, 93 A. 245 [1915]." *Gagnon* v. *United Aircraft Corp.*, 159 Conn. 302, 306, 268 A.2d 660 (1970).

As a result, it would be contrary to the spirit of § 31-298 to establish formal requirements for the admissibility of scientific testimony in workers' compensation cases, especially in light of the fact that the rules of evidence do not apply. See *Armstrong* v. *Wichita*, 21 Kan. App. 2d 750, 758, 907 P.2d 923 (1995), rev. denied, 259 Kan. 927 (1996) (neither *Frye* nor *Daubert* standards applicable to workers' compensation cases because technical rules of evidence specifically not applicable). We also note that our Supreme Court has stated that our appellate courts give " 'great deference to the construction given to [workers' compensation law] by the commissioner and the review [board] because they are both charged with its enforcement.' *Crochiere* v. *Board of Education*, 227 Conn. 333, 354, 630 A.2d 1027 (1993)." *Dorsey* v. *United Technologies Corp.*, 243 Conn. 949, 952 n.4, 704 A.2d 795 (1997) (*Berdon, J.*, concurring). We know of no workers' compensation case that has applied either the *Frye* or the *Daubert* standards for admissibility of scientific evidence. We, therefore, decline to require workers' compensation commissioners to be bound by the *Daubert* standard in determining whether to admit scientific testimony.

### III

The defendants next claim that the commissioner improperly refused to allow cross-examination as to the resignation of Wesley Jordan from Becton Dickinson to show bias. This claim is without merit.

Jordan was the corporate safety director at Becton Dickinson from 1981 to 1990. Jordan has a Ph.D. in environmental health and safety, and is a licensed professional engineer and a certified safety professional. He was responsible for worker safety, industrial

hygiene, environmental protection and fire protection at the Canaan plant. Jordan testified that Mulroy was exposed to ambient concentrations of ETO in the air throughout the Canaan plant of Becton Dickinson.

"Both parties may appear at any hearing . . . and no formal pleadings shall be required . . . . In all cases and hearings under the provisions of this chapter, the commissioner shall proceed, so far as possible, in accordance with the rules of equity. He shall not be bound by the ordinary common law or statutory rules of evidence or procedure, but shall make inquiry, through oral testimony, deposition testimony or written and printed records, in a manner that is best calculated to ascertain the substantial rights of the parties and carry out the provisions and intent of this chapter. . . ." General Statutes § 31-298. We have indicated that the rules of evidence generally do not apply to workers' compensation hearings; see, e.g., *Manfredi v. United Aircraft Corp.*, 138 Conn. 23, 25, 81 A.2d 448 (1951); therefore, it is within the commissioner's discretion to determine what testimony is relevant and admissible.

The commissioner in this case allowed inquiry into the reasons for Jordan's resignation from Becton Dickinson. The defendants inquired as to the circumstances under which Jordan left Becton Dickinson. He responded that he had resigned. The defendants then asked how Jordan would characterize his present feelings toward Becton Dickinson, to which Jordan responded, "Well, I think it's a fine company." The defendants, after several unrelated questions, asked, "Isn't it a fact that you resigned from Becton Dickinson because they were going to demote you?" Jordan responded, "I resigned to start my own business . . . ." After this question was answered, the plaintiff objected to the question on the basis of relevance. The parties

then had an off-the-record discussion after which further questioning regarding Jordan's resignation was not permitted.

After reviewing the record and the briefs, we conclude that the commissioner did not abuse her discretion.

IV

Finally, the defendants claim that the commissioner improperly denied their motion to correct several factual findings and the award. We are unpersuaded.

"We will not change the finding of the commissioner unless the record discloses that the finding includes facts found without evidence or fails to include material facts which are admitted or undisputed. *Wheat* v. *Red Star Express Lines*, 156 Conn. 245, 248, 240 A.2d 859 (1968). It [is] the commissioner's function to find the facts and determine the credibility of witnesses . . . and a fact is not admitted or undisputed merely because it is uncontradicted. . . . Id., 249." (Internal quotation marks omitted.) *Simmons* v. *Bonhotel*, 40 Conn. App. 278, 286, 670 A.2d 874 (1996).

After a review of the transcripts and the record, we conclude that the findings and the award of the commissioner were supported by the evidence and included all material facts that were admitted or undisputed. As a result, we conclude that the commissioner did not abuse her discretion in denying the defendants' motion to correct.

The decision of the compensation review board is affirmed.

In this opinion the other judges concurred.