HENRY B. KUDLACZ *v.* LINDBERG HEAT
TREATING COMPANY ET AL.
(AC 22115)

Foti, Flynn and West, Js.

Argued May 3—officially released June 25, 2002

*Henry B. Kudlacz,* pro se, the appellant (plaintiff).

*Richard S. Bartlett,* for the appellees (named defendant et al.).

*Nicone J. Gordon,* for the appellees (defendant United Parcel Service et al.).

*Opinion*

PER CURIAM. The pro se plaintiff, Henry B. Kudlacz, appeals from the decision of the workers' compensation review board (board) affirming the finding and dismissal of the plaintiff's claim by the workers' compensation commissioner (commissioner). The plaintiff claims that there was no substantial reason to dismiss his claim. We affirm the decision of the board.

The commissioner found the following facts. The plaintiff had two employers. On May 29, 1992, the plaintiff was employed by the defendant Lindberg Heat Treating Company (Lindberg) as a delivery driver. On June 3, 1992, he was employed by the defendant United Parcel Service (UPS).

On May 29, 1992, the plaintiff was making a delivery for Lindberg to one of its customers. The plaintiff backed his truck to the loading dock, which had rubber bumpers. After the truck was unloaded, the plaintiff had to remove the loading plate. To do so, he put his right foot on the dock and his left foot on the rubber bumper. As he lifted the plate, the rubber bumper gave way and, according to the plaintiff, he fell between the truck and the loading dock. The first report of injury that the plaintiff filled out indicated that he fell between the truck and the loading dock. The plaintiff testified

to this effect numerous times during his deposition on June 30, 1995.

The commissioner found that it was physically impossible for a man of the plaintiff's size, standing six feet, three inches tall and weighing 215 pounds, to fall between the seven inch space between the truck and the dock. On cross-examination at the formal hearing, the plaintiff denied that he had testified previously that he had fallen between the truck and the dock. The commissioner found other instances in which the plaintiff's testimony with respect to the alleged May 29, 1992 incident was contradictory.

The plaintiff did not seek medical attention until June 5, 1992, when he was examined at a hospital emergency room. The emergency room records indicate that the plaintiff had fallen two days before, which would have been June 3, 1992. The records do not mention a May 29, 1992 injury. The plaintiff also received treatment at a health care center on June 8, 1995, where he sought treatment for lower back pain. According to the history taken at the center, the plaintiff first noticed the lower back pain when he was at UPS on June 5, 1995. The history does not mention the alleged fall between the loading dock and the truck.

The plaintiff testified that for three or four weeks prior to May 29, 1992, he had pain in his lower back, which he attributed to the performance of his duties at UPS. He had been employed by UPS since July, 1991, where his duties required repetitive lifting. According to the plaintiff, the pain in his lower back peaked on June 4, 1992, while he was at UPS. The pain was so severe that he had to perform his duties on his knees. At the formal hearing, the plaintiff contended that he hurt his head and neck when he fell while in Lindberg's service on May 29, 1992. He did not hurt his lower back when he fell on that date. According to him, the lower

back pain is the result of the repetitive lifting he performed at UPS.

The commissioner heard contradictory evidence regarding X rays of the plaintiff's lumbosacral spine. The plaintiff's expert opined that the plaintiff had a compression fracture. The independent medical expert opined, however, that the plaintiff did not have a compression fracture. The commissioner credited the testimony of the independent expert.

On November 10, 1992, the commissioner approved a voluntary agreement entered into by the plaintiff and Lindberg. The agreement indicated that the date the plaintiff was injured was June 3, 1992, and described the injury as a compression fracture at L-2 and L-3. Although the plaintiff signed the agreement, he claims that he did not know what he was signing and that he does not know what a compression fracture is. He claims that his June 3, 1992 injury occurred while he was employed by UPS, not Lindberg. Lindberg filed a motion to open the voluntary agreement based on a mistake of fact. The commissioner granted Lindberg's motion, vacated the voluntary agreement because it was based on a mutual mistake of fact and dismissed the plaintiff's claim. The board affirmed the decision, and the plaintiff appealed to this court.

"The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . *Besade* v. *Interstate Security Services*, 212 Conn. 441, 449, 562 A.2d 1086 (1989). Neither the review board nor this court has the power to retry facts. See *Six* v. *Thomas O'Connor & Co.*, 235 Conn. 790, 798–99, 669 A.2d 1214 (1996). . . . *Doe* v. *Stamford*,

241 Conn. 692, 696–97, 699 A.2d 52 (1997)." (Internal quotation marks omitted.) *Schiano* v. *Bliss Exterminating Co.*, 57 Conn. App. 406, 411, 750 A.2d 1098 (2000).

"The standard of review to be used by the board when reviewing a commissioner's findings is set forth in Regulations of Connecticut State Agencies § 31-301-8. That section directs the board not to retry the case before it, but to determine whether evidence supports the commissioner's finding. Whether an injury arose out of and in the course of employment is a question of fact to be determined by the commissioner. *Pereira* v. *State*, 228 Conn. 535, 544, 637 A.2d 392 (1994)." (Internal quotation marks omitted.) *Noble* v. *Allstate Ins. Co.*, 67 Conn. App. 160, 163, 786 A.2d 1126 (2001).

"[T]he review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is oblig[ated] to hear the appeal on the record and not retry the facts. . . . [T]he power and duty of determining the facts rests on the commissioner, the trier of facts." (Internal quotation marks omitted.) *Kolomiets* v. *Syncor International Corp.*, 51 Conn. App. 523, 526–27, 723 A.2d 1161 (1999), aff'd, 252 Conn. 261, 746 A.2d 743 (2000). "The commissioner's conclusions are accorded the same deference as that given to similar conclusions of a trial judge or jury on the issue of proximate cause." (Internal quotation marks omitted.) Id., 527.

"In workers' compensation matters, the commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . . *Keenan* v. *Union Camp Corp.*, 49 Conn. App. 280, 286, 714 A.2d 60 (1998). We will not change the finding of the commissioner unless the record discloses that the finding includes facts found without evidence or fails to include material facts which are admitted or undisputed. . . . *Simmons* v. *Bonhotel*, 40 Conn. App. 278, 286, 670 A.2d

874 (1996)." (Internal quotation marks omitted.) *Panta-nella* v. *Enfield Ford, Inc.*, 65 Conn. App. 46, 56, 782 A.2d 141, cert. denied, 258 Conn. 930, 783 A.2d 1029 (2001).

"Our role is to determine whether the review [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . This standard clearly applies to conflicting expert medical testimony. It [is] the province of the commissioner to accept the evidence which impress[es] him as being most credible and more weighty. . . . Accordingly, we will not disturb the commissioner's choice as to which expert was more credible." (Citations omitted; internal quotation marks omitted.) *Noble* v. *Allstate Ins. Co.*, supra, 67 Conn. App. 165.

"As is the standard of review, the law governing eligibility for workers' compensation is also well established. It is an axiom of [workers'] compensation law that awards are determined by a two-part test. The [claimant] has the burden of proving that the injury claimed *arose out of* the employment and *occurred in the course of* employment. There must be a conjunction of [these] two requirements . . . to permit compensation. . . . The former requirement relates to the origin and cause of the accident, while the latter requirement relates to the time, place and [circumstance] of the accident. . . .

"[T]o establish that [the] injury occurred in the course of employment, the claimant has the burden of proving that the accident giving rise to the injury took place (a) within the period of employment; (b) at a place [he] may reasonably [have been]; and (c) while [he was] reasonably fulfilling the duties of the employment or doing something incidental to it." (Citations omitted; emphasis in original; internal quotation marks omitted.)

*Kolomiets* v. *Syncor International Corp.*, supra, 51 Conn. App. 527–28.

On the basis of our review of the record and the parties' briefs and considering the parties' oral arguments, we conclude that the central issue in this matter is credibility. Where factual issues are in dispute and the credibility of witnesses, including medical experts, is determinative of whether a claimant is entitled to workers' compensation benefits, this court is bound by the findings of the commissioner. The record here contains evidence of the plaintiff's contradictory testimony and other evidence as to when, where and how he sustained injuries.[1] The medical experts also disagreed as to whether the plaintiff sustained a compression facture of the lumbosacral spine.

We conclude therefore that the commissioner's decision is the result of a proper application of the law to the subordinate facts. Thus, the board properly affirmed the commissioner's decision.

The decision of the workers' compensation review board is affirmed.

---

[1] At oral argument before us, the plaintiff took the position that his testimony was not inconsistent but that any inconsistencies are due to the fact that English is not his native language. He either did not understand the questions or the person hearing his answers did not understand him. This is a factual issue, which this court may not review de novo.