DENIS A. ENGLISH *v.* TOWN OF MANCHESTER ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and HEALEY, Js.

Argued April 6—decision released July 11, 1978

*Edward D. O'Brien,* for the appellants (defendants).

*Jerome I. Walsh,* with whom was *George W. Ripley,* for the appellee (plaintiff).

Loiselle, J. The defendants appealed to the Court of Common Pleas from a decision of the workmen's compensation commissioner finding the plaintiff entitled to temporary total disability benefits from January 9, 1974, until such time as it is shown that his incapacity has decreased or ceased. The court dismissed the defendants' appeal and from the judgment accordingly rendered, the defendants appealed to this court.

The commissioner found that on January 9, 1974, the plaintiff, then an employee of the defendant town, was riding as a passenger in a town truck

when it was struck on the driver's side by a state snowplow with such force that it was pushed to the side of the road. Just prior to the time of impact, the plaintiff saw that a collision was imminent and braced himself by bending down in a curled-over position. Immediately after the accident, the plaintiff walked to a nearby restaurant where he telephoned his foreman to notify him of the accident. Within minutes, he returned to the scene of the accident and found that the police had already arrived. While standing there, the plaintiff suddenly passed out. Upon regaining consciousness, he found himself lying on his back on the ground with a police officer attending to him. He was subsequently taken by ambulance to a hospital, where he complained of a headache. The initial diagnosis impression was of a "neck sprain." The plaintiff was treated, released, and told to see his family physician.

Prior to the accident the plaintiff had no medical history of fainting or blackouts. On January 11, 1974, the plaintiff was seen by his family physician, Nicholas A. Marzialo, a qualified and experienced physician, who was the attending physician in this claim. During this visit, the first of many, Marzialo treated the plaintiff for neck, shoulder and back symptoms and complaints of headaches. The physician found that the plaintiff had some restricted motion and that his symptoms became more severe when he was physically active. Muscle relaxants and pain medication were prescribed, and the plaintiff was ordered to wear a neck support and to restrict his activities. Over the course of the following months, Marzialo referred the plaintiff to Peter Gram, an orthopedic surgeon, John X. R. Basile, a qualified and experienced neurosurgeon, and the Lahey Clinic in Boston, Massachusetts.

Despite the numerous diagnostic tests and studies undertaken, no definite diagnosis for the plaintiff's condition was established.

Nonetheless, while the plaintiff attempted several times to return to work, he was unable to continue due to blackout spells. On numerous occasions during the period of this claim, the plaintiff blacked out, fell, and sustained physical injuries which required emergency room treatment. On June 5, 1975, the plaintiff complained to Marzialo of dizziness, speech difficulty, and other symptoms indicative of a central nervous system problem. He was admitted to a hospital and seen by neurologists. After his release, his symptoms persisted and others, including numbness, shaking, impotency, and considerable and unaccounted-for weight loss, appeared.

At the hearing before the commissioner, Marzialo described the plaintiff's physical condition prior to the January 9, 1974, accident as that of a healthy young male. Indeed, prior to his injury, the plaintiff had a record of steady employment. Since 1966 he had worked for the defendant town of Manchester, first in the cemetery department and then in the water department. His duties involved extensive physical activity, including grave and ditch digging and plumbing work. On the basis of his professional knowledge of the plaintiff, the history of the accident, the subsequent treatment, tests, and consultations, Marzialo concluded that the plaintiff's injuries were related with reasonable medical probability to the January 9, 1974, accident. Marzialo further testified that in his opinion the plaintiff was, as of his last examination on November 21, 1975, totally disabled from work.

At the defendants' request, two other physicians examined the plaintiff. Considerable differences of opinion were expressed by the expert medical witnesses who testified concerning the cause, nature, and extent of the plaintiff's disability. None definitely diagnosed his condition, but Marzialo submitted his opinion that whatever the actual diagnosis, on the basis of reasonable medical probability, the January 9, 1974, episode caused it.

Adopting the conclusions of Marzialo, the commissioner found the plaintiff entitled to temporary total disability benefits from the date of injury until such time as it is shown that the plaintiff's condition has decreased or ceased.[1]

The sole issue on appeal to this court is whether the court erred in dismissing the defendants' appeal, given the absence of a medical diagnosis of the plaintiff's condition. The defendants argue that Marzialo, upon whose testimony the commissioner relied, conceded that his conclusion that the plaintiff's condition was causally related to the January 9, 1974, accident, was purely speculative. A review of the transcript reveals that while the physician conceded that a particular diagnosis was speculative, he did not state that the causal connection he determined was speculative, but, rather, that "his injuries are definitely related to that incident when he had the accident." In any event, under *Poulick*

---

[1] The commissioner's finding indicates that the defendants had paid temporary total disability benefits from January 10, 1974, to April 1, 1974; temporary partial disability benefits from May 22, 1974, to July 12, 1974; and medical benefits of $773.71. They failed to file a form 36, notice to compensation commissioner and employee of intention to discontinue payments, or a form 43, notice to compensation commissioner and employee of intention to contest liability to pay compensation. This fact was noted by both the commissioner and the court, although neither considered its relevance to the case.

v. *Radio City Restaurant,* 153 Conn. 410, 216 A.2d
831, testimony that there is a causal connection
between the "accident" and the injury is not
required. "It is enough if there is evidence from
which the commissioner can properly conclude that
it is reasonably probable, or more probable than not,
that the causal connection existed." Id., 412. There
is sufficient evidence in this case to support the com-
missioner's conclusion.

Consequently, the narrow issue raised in this case
is whether, once a causal connection between an
incident and a physical condition has been estab-
lished, the condition must be specifically diagnosed
to warrant compensation. In *Putney* v. *Lehigh
Truck Equipment Corporation,* 145 Conn. 731, 732,
141 A.2d 482, this court, when confronted by a claim
raised by a defendant in a negligence suit that no
objective or clinical evidence supported the plain-
tiff's more serious claimed injuries, responded,
"[w]e know of no rule, nor has the defendant cited
authority for any, which excludes, as an element of
damage, an injury merely because it is not clinically
or objectively demonstrable." This reasoning was
adopted in *Cooke* v. *United Aircraft Corporation,*
152 Conn. 214, 218, 205 A.2d 484, in which a judg-
ment affirming the award made by the workmen's
compensation commissioner was again affirmed by
this court.

Section 31-275 of the General Statutes defines
"personal injury" or "injury" to include "accidental
injury which may be definitely located as to the
time when and the place where the accident
occurred . . . ." Particularly in light of the fact
that chapter 568 of the General Statutes, providing
for workmen's compensation benefits, is to be

liberally construed; *Powers* v. *Hotel Bond Co.*, 89 Conn. 143, 146, 93 A.2d 245; to effectuate its underlying objective to provide for workers and their dependents; *Klapproth* v. *Turner,* 156 Conn. 276, 279, 240 A.2d 886; it is clear that the lack of a definitive diagnosis does not preclude recovery under the Workmen's Compensation Act. The commissioner's ultimate conclusion is abundantly supported by the evidence.

There is no error.

In this opinion the other judges concurred.