*Teri E. Bayer*, in opposition.

Decided July 21, 1999

## MATTHEW ANGUISH *v.* TLM, INC., ET AL.

The plaintiff's petition for certification for appeal from the Appellate Court, 53 Conn. App. 241 (AC 18076), is denied.

BERDON, J., dissenting. The plaintiff, Matthew Anguish, was stripped of his temporary total disability benefits (temporary benefits)—awarded pursuant to the Workers' Compensation Act (act)[1]—without ever being afforded an opportunity to be heard at a meaningful time and in a meaningful manner before the workers' compensation commissioner (commissioner). Temporary benefits are a substitute for the wages that injured employees are no longer physically capable of earning; without these benefits, many injured employees and their families would be unable to afford food, shelter, and the other necessities of life. In my view, the failure to conduct even an informal hearing at an appropriate time *before* depriving an injured employee of temporary benefits violates common sense, the act and fundamental principles of due process.

The majority of this court refuses to grant certification to review the termination of the plaintiff's temporary benefits, presumably because it believes that the controversy is moot. The appeal may be moot at the moment for Matthew Anguish, but it is not moot for thousands of other injured employees who are deprived of temporary benefits without first being afforded meaningful procedural safeguards. This case presents a classic example of a well recognized exception to the mootness doctrine: the harm that the plaintiff suffered

---

[1] General Statutes § 31-275 et seq.

is "capable of repetition, yet evad[es] review."[2] This is so even under this court's highly restrictive application of this equitable doctrine.[3] *Loisel* v. *Rowe*, 233 Conn. 370, 389, 660 A.2d 323 (1995) (*Katz*, *J.*, with whom *Berdon*, *J.*, joined, dissenting).

In an effort to prevent the kind of injustice that befell the plaintiff in the present case, the legislature requires a hearing before an injured employee's temporary benefits may be terminated. General Statutes § 31-296 provides in pertinent part: "The employee may request a hearing on any . . . proposed discontinuance or reduction [of temporary benefits] within ten days of receipt of . . . notice. Any such request for a hearing shall be given priority over requests for hearings on other matters. The commissioner shall not approve any such discontinuance or reduction prior to . . . the completion of such hearing . . . ."[4] In the present case,

---

[2] *Southern Pacific Terminal Co.* v. *Interstate Commerce Commission*, 219 U.S. 498, 515, 31 S. Ct. 279, 55 L. Ed. 310 (1911).

[3] See the text of this dissenting opinion.

[4] More fully, General Statutes § 31-296 provides in pertinent part: "Voluntary agreements. If an employer and an injured employee, or in case of fatal injury his legal representative or dependent, at a date not earlier than the expiration of the waiting period, reach an agreement in regard to compensation, such agreement shall be submitted in writing to the commissioner by the employer with a statement of the time, place and nature of the injury upon which it is based; and, if such commissioner finds such agreement to conform to the provisions of this chapter in every regard, he shall so approve it. A copy of the agreement, with a statement of the commissioner's approval thereof, shall be delivered to each of the parties and thereafter it shall be as binding upon both parties as an award by the commissioner. The commissioner's statement of approval shall also inform the employee or his dependent, as the case may be, of any rights the individual may have to an annual cost-of-living adjustment or to participate in a rehabilitation program under the provisions of this chapter. He shall retain the original agreement, with his approval thereof, in his office and, if an application is made to the superior court for an execution, he shall, upon the request of said court, file in the court a certified copy of the agreement and his statement of approval thereof. Before discontinuing or reducing payment on account of total or partial incapacity under any such agreement, the employer, if it is claimed by or on behalf of the injured

the plaintiff's temporary benefits were terminated ex parte, without so much as an informal hearing conducted at a meaningful time.

I rely on the uncontradicted facts contained in the plaintiff's petition to this court. "On December 16, 1986, the plaintiff . . . injured his back while employed by the defendant TLM, Inc., in Greenwich, Connecticut. A voluntary agreement was approved by the [commissioner] for the Seventh District on September 7, 1988. The plaintiff received [temporary benefits] . . . .

"After the plaintiff's second lumbar surgery on November 20, 1992, the defendants issued a [f]orm 36 . . . by which the defendants sought to terminate the plaintiff's [temporary benefits]. The plaintiff filed a timely objection to the defendant's [f]orm 36, and the commissioner held an informal hearing on October 31,

person that his incapacity still continues, shall notify the commissioner and the employee, by certified mail, of the proposed discontinuance or reduction of such payments, with the date of such proposed discontinuance or reduction and the reason therefor, and, such discontinuance or reduction shall not become effective unless specifically approved in writing by the commissioner. The employee may request a hearing on any such proposed discontinuance or reduction within ten days of receipt of such notice. Any such request for a hearing shall be given priority over requests for hearings on other matters. The commissioner shall not approve any such discontinuance or reduction prior to the expiration of the period for requesting a hearing or the completion of such hearing, whichever is later. In any case where the commissioner finds that an employer has discontinued or reduced any payments made in accordance with this section without the approval of the commissioner, such employer shall be required to pay to the employee the total amount of all payments so discontinued or the total amount by which such payments were reduced, as the case may be, and shall be required to pay interest to the employee, at a rate of one and one-quarter per cent per month or portion thereof, on any payments so discontinued or on the total amount by which such payments were reduced, as the case may be, plus reasonable attorney's fees incurred by the employee in relation to such discontinuance or reduction. . . .

"The employee may request a hearing by the compensation commissioner on the discontinuance or reduction set forth in this notice within ten days of receipt of this notice."

1994. At that time, the commissioner indicated that he would defer a decision on the Form 36 pending the outcome of an independent medical examination [IME] which was scheduled to take place with Henry Rubinstein, M.D. on November 29, 1994. . . .

"Immediately upon receiving a copy of Dr. Rubinstein's report on December 19, 1994 [which opined that the plaintiff could return to work], plaintiff's counsel wrote to the commissioner to request an Emergency Informal Hearing to revisit the outstanding issue of the [f]orm 36. However, previously on December 19, 1994, based on the IME report, despite the plaintiff's pending objection and without first holding even an informal hearing on the subject of the . . . report, the commissioner approved the [f]orm 36 retroactively to August 31, 1994. The effect of the commissioner's decision was that the plaintiff's [temporary benefits] were discontinued and all [temporary benefits] paid from August 31, 1994, through the date of the commissioner's decision were then used as an advance against the plaintiff's specific compensation benefit.

"The plaintiff filed a timely appeal with the [review board]. In its decision dated July 13, 1995, the [review board] sustained the commissioner's ruling, did not reinstate the plaintiff's [temporary benefits] and remanded the case to the Seventh District for a formal evidentiary hearing on the issue of the [f]orm 36. . . . [T]he plaintiff remained deprived of the benefits to which he was entitled during the one-year interim [before the formal hearing took place]. . . ."

"Subsequently, pursuant to the remand from the [review board], the commissioner held a formal hearing on July 18, 1996.[5] In a Finding and Award dated August

---

[5] This hearing occurred approximately one year after the plaintiff was deprived of his temporary benefits.

22, 1996, and signed September 17, 1996, the commissioner revoked the granting of the [f]orm 36 and reinstated the plaintiff's entitlement to [temporary benefits] retroactively to the date of the erroneous termination. The commissioner also concluded, without discussion, that the procedure utilized was lawful and that the plaintiff's due process rights had not been violated.

"The plaintiff timely appealed to the [review board] regarding the statutory and due process considerations in granting the [f]orm 36. In a decision dated January 20, 1998, the [review board] dismissed the plaintiff's appeal without addressing the merits of the plaintiff's claims on the ground that, inter alia, the plaintiff's statutory and constitutional claims concerning the procedure used in approving the [f]orm 36 had been rendered moot. The plaintiff then timely appealed the matter to the Appellate Court pursuant to General Statutes § 31-301b. In a decision dated May 11, 1999, the Appellate Court dismissed the plaintiff's appeal for mootness, concluding that the otherwise moot statutory and constitutional violation presented by the plaintiff did not qualify for review under the capable of repetition yet evading review exception. *Anguish* v. *TLM, Inc.,* [supra, 53 Conn. App. 243]."

The Appellate Court was wrong to dismiss the plaintiff's appeal from the termination of his temporary benefits. It is apparent that the four factors identified in *Loisel* v. *Rowe,* supra, 233 Conn. 382, are met here: (1) the issue is "of such short duration" that it will evade review because the benefits are temporary; (2) "the [issue] relate[s] to an ongoing civil . . . program of the state" because, as the defendant acknowledges, thousands of employees have their temporary benefits terminated every year; (3) "the plaintiff . . . [is] likely to be affected in the same manner again" because he still receives temporary benefits; and (4) the compensation

of injured workers and fundamental concerns of due process are both "matters of public importance." Accordingly, this case falls squarely within the "capable of repetition yet, evading review" exception to the general rule that we will not adjudicate controversies that have become moot. Id., 382–83.

Turning to the merits of the plaintiff's arguments, the review board claimed that the plaintiff's right to due process was protected because he got an informal hearing after the form 36 was issued, even though the IME was not scheduled to take place for *nearly one month after* that hearing.[6] This is absurdly and flagrantly wrong. The only meaningful time for a hearing would have been *after* the plaintiff had received and analyzed the results of the IME, because these results lay at the heart of the commissioner's ultimate ruling. It was unjust and inequitable to terminate the plaintiff's temporary benefits without first affording him a meaningful opportunity to present arguments relating to the results of the IME.

The termination of the plaintiff's temporary benefits without any post-examination hearing violated both common sense and the procedural safeguards contained in § 31-296. Moreover, stripping the plaintiff of his temporary benefits also violated fundamental principles of due process. See, e.g., *Armstrong* v. *Manzo*, 380 U.S. 545, 550, 85 S. Ct. 1187, 14 L. Ed. 2d 26 (1965), quoting *Mullane* v. *Central Hanover*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (" '[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt

---

[6] More fully, the review board explained that "the term 'hearing' as used in § 31-296 . . . mean[s] a single emergency informal hearing that should be held as soon as possible after the claimant has objected to the [f]orm 36. . . . The commissioner should render his or her decision at the hearing or shortly thereafter by providing a copy of the ruling to each party . . . ." (Citations omitted.)

that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case' "). If our constitution requires a meaningful hearing before a nonpossessory lien can be placed on real estate; *Roundhouse Construction Corp.* v. *Telesco Masons Supplies Co.*, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976); then such a hearing is certainly required before an injured employee can be stripped of the temporary benefits that he and his family need in order to survive.

Although the plaintiff received an initial hearing prior to the IME in the present case, this hearing was not meaningful. At the time of the initial hearing, the commissioner announced that he would not be able to determine whether the plaintiff was entitled to continue receiving temporary benefits until after he had reviewed the results of the IME (which would not be conducted until late the following month). Because it was therefore impossible for the plaintiff to address an issue at the initial hearing that the commissioner clearly deemed dispositive, that initial hearing was neither sufficient nor meaningful. Basic considerations of fairness compel the conclusion that, before he stripped the plaintiff of his temporary benefits, the commissioner should have afforded the plaintiff an opportunity to address the results of the IME.

The meaninglessness of the initial hearing is underscored by the fact that—once the plaintiff was permitted to present arguments concerning the IME—the commissioner reinstated the plaintiff's temporary benefits. Once the plaintiff finally received a meaningful hearing, it was immediately apparent that he had been wrongly deprived of his temporary benefits. Unfortunately, this did not happen until long after the ex parte termination of the plaintiff's temporary benefits.

Although the review board was technically accurate to observe that a claimant who does not prevail at an informal pre-examination hearing may ultimately prevail at a subsequent post-examination formal hearing, this is akin to saying that a beating is harmless because the bruises will eventually heal. To make the same point without metaphor, the review board failed to account for the grave consequences associated with the deprivation of temporary benefits between the pre-examination hearing and the ultimate reinstatement of benefits many months or even years later. Equally important, the review board's observation overlooks the fundamental principle that no citizen may be deprived of property without first being afforded a meaningful hearing conducted *at a meaningful time.*

For these reasons, I would grant the plaintiff's petition for certification. Accordingly, I dissent.

*Stewart M. Casper, Victoria de Toledo* and *Gwendolyn Field Noto,* in support of the petition.

*Jason M. Dodge,* in opposition.

Decided July 21, 1999