MICHAEL DAUBERT *v.* BOROUGH
OF NAUGATUCK ET AL.
(AC 21701)

Lavery, C. J., and Bishop and Peters, Js.

Argued May 2—officially released August 20, 2002

*D. Kirt Westfall*, for the appellant (plaintiff).

*Richard T. Stabnick*, for the appellees (defendants).

*Opinion*

BISHOP, J. The plaintiff, Michael Daubert, appeals from the decision of the workers' compensation review board (board) affirming the commissioner's decision to dismiss his claim for benefits due to injuries suffered in an accident while on patrol as a police officer. The plaintiff claims that the board improperly affirmed the commissioner's decision because the commissioner's findings established that the claim was compensable. We agree because the only reasonable inference that can be drawn from the commissioner's factual findings is that the plaintiff's injuries arose out of and in the course of his employment. We therefore reverse the decision of the board.

On January 26, 1997, at approximately 1:46 a.m., the plaintiff, while on duty as a police officer for the defendant borough of Naugatuck,[1] was involved in a motor vehicle accident when his cruiser struck a tree. On February 13, 1997, the plaintiff filed a notice of claim for compensation due to injuries suffered during the accident. In his claim, the plaintiff alleged that the injur-

---

[1] The Hartford Insurance Group also is a defendant.

ies occurred as the result of a "one car accident while on patrol." The plaintiff described his injuries as a "loss of sight in left eye, loss of feeling in right hand and foot, bruised spine and memory problems."

The commissioner held fourteen formal hearings on the matter during a two year period[2] during which extensive evidence was presented by both parties. The plaintiff alleged that he was searching for a reported reckless driver when he failed to negotiate a curve in the road and his vehicle struck the tree. The plaintiff further alleged that he lost consciousness following impact. The borough and its defendant workers' compensation carrier did not contest the fact that the accident had occurred while the plaintiff was on duty, but argued that the accident could not have occurred in the manner alleged.

In his finding and award dated February 4, 2000, the commissioner characterized the issue to be decided as "[w]hether the [plaintiff's] accident occurred as alleged . . . thereby resulting in a compensable claim pursuant to chapter 568 of the Connecticut General Statutes?" The commissioner then recited the testimony of ten different witnesses, including the plaintiff, in eighty-two "findings of fact."[3]

After summarizing the witness testimony in the eighty-two numbered paragraphs, the commissioner set forth nine findings and conclusions based on his review of the relevant evidence and testimony.[4] The first find-

---

[2] The hearings were held from June 5, 1997, until June 15, 1999.

[3] Only three of the eighty-two "findings of fact" did not involve testimony. Two were references to information contained in the police report, and one referred to the fact that administrative notice had been taken of a workers' compensation file pertaining to a previous claim of injury by the plaintiff.

[4] Although the commissioner captioned the eighty-two paragraphs "findings of fact," they constituted a mere recitation of the evidence. The actual findings of fact consisted of separately lettered paragraphs. The commissioner prefaced each of the actual findings and conclusions with the words: "I am satisfied, conclude and find that . . . ." After each of the nine findings and conclusions, the commissioner added: "It is so found."

ing and conclusion was that the commission had jurisdiction to decide the matter. The second was that "the [plaintiff], while on duty as [a police officer] of the borough of Naugatuck, was involved in a motor vehicle accident wherein his police cruiser struck a tree." In his remaining seven findings and conclusions, the commissioner made determinations as to the credibility of various witnesses whose testimony had been summarized in the eighty-two "findings of fact." The following is a summary of the relevant portions of that testimony.[5]

The plaintiff testified that prior to the accident, he was working as the road supervisor on the third shift of the day, from 10:30 p.m. on January 25, 1997, to 6:30 a.m. on January 26, 1997. At approximately 11 p.m. on January 25, 1997, he went out on the road in his cruiser. While patrolling in his cruiser, he heard a radio call dispatching Officer Don Ward to investigate the report of an erratic driver, possibly intoxicated, driving east on Route 68. The plaintiff heard Officer Gregory Dean report to dispatch over the radio that because he was close to the area, he also would respond. The plaintiff had been told the previous night to supervise calls to which Dean responded because Dean was a rookie. The plaintiff therefore reported to dispatch that he would respond as well.

The plaintiff testified that in the course of responding to the call, he slowed his cruiser several times to "spotlight"[6] two car dealerships in the vicinity. The plaintiff explained that the dealerships had reported problems of stolen cars and auto parts, and that he thought the driver in question might have stolen a vehicle from one of the dealerships. The plaintiff eventually turned onto Wooster Street, a hilly and bumpy road, where he con-

---

[5] The commissioner incorporated that summarized testimony in the remaining findings and conclusions.

[6] "Spotlighting" refers to turning on the spotlights that are located on either end of the cruiser's roof mounted light bar to illuminate the surrounding area.

tinued to spotlight intersecting streets and driveways while traveling at approximately 35 to 50 miles per hour.[7] After spotlighting Whitney Place, he looked up and saw a tree, but could not avoid hitting it. According to the police report, the plaintiff stated that prior to hitting the tree he had attempted to take evasive action, but had failed to negotiate a curve in the road.

A videotape was entered into evidence, showing the path that the plaintiff had traveled immediately before the accident and containing his narrative description of the route taken.[8] The description was not completely consistent with the plaintiff's prior testimony, in part because he did not indicate on the videotape that he had spotlighted Whitney Place.

Robert Allen and Dean, two of the officers on duty when the accident occurred, both testified that the skid marks on the pavement at the accident scene lined up with the cruiser's rear tires. That was confirmed by field notes in the police report.

John McLay, an officer with the Waterbury police department who was retained by the defendants as an accident reconstruction expert, reviewed photographs of the accident scene and also testified that the skid marks on the pavement ran straight to the cruiser's rear tires. He further testified that he estimated the speed of the cruiser prior to braking as approximately 33 miles per hour, that the vehicle had been traveling in the lane to the left of the center line and that the vehicle had gone straight into the tree from the road. McLay testified that if the plaintiff had been traveling at 45 to 50 miles per hour on the right side of the road, as he reported to the investigating officer, the vehicle would not have

---

[7] The police report indicated that the plaintiff claimed he was driving 45 to 50 miles per hour prior to the accident.

[8] The videotape was supplied by the plaintiff's accident reconstruction expert, Eugene Baron.

stopped in the position that it did and with the damage that it sustained. He also testified that if the plaintiff had stopped to spotlight Whitney Place, he would not have had sufficient time to reach a speed resulting in skid marks of 36 feet, as measured at the scene.

Eugene Baron, the plaintiff's accident reconstruction expert, testified that the skid marks indicated that the vehicle did not go directly into the tree, but had shifted position on impact. That testimony was in conflict with the field notes in the police report. He also testified that the skid marks showed that the plaintiff's vehicle would have been entirely in the right lane prior to braking and that the plaintiff had been traveling 35 to 40 miles per hour when he first applied the brakes.

Ronald Artman, a paramedic who administered first aid to the plaintiff following the accident, testified that the plaintiff did not show any outward signs of injury, but did not appear conscious when initially observed and did not respond to verbal commands. He also testified that when he conducted tests to establish if the plaintiff was unconscious, the plaintiff's responses were characteristic of a conscious person. Artman was upset by that discrepancy, and testified that he reported his concerns to another officer and the hospital staff.

Jan Mashman, the plaintiff's physician, testified that the plaintiff's responses to Artman's tests were indicative of an "altered level of consciousness," but that there was no medical literature to support such a theory. He further testified that the plaintiff had suffered a mild brain injury.

James Donaldson, a physician who examined the plaintiff at the defendants' request several months after the accident, testified that following his investigation of the various medical reports, the transcript of Artman's testimony, transcript excerpts from the plaintiff's testimony and the police reports, he believed that it would

have been impossible for the plaintiff to have suffered a period of unconsciousness. He therefore testified that in his opinion, based on reasonable medical probability, the plaintiff had not been rendered unconscious as a result of the accident.

With that testimony in mind, we now turn to the commissioner's remaining conclusions and findings. The commissioner determined that the plaintiff's explanation that his vehicle was traveling at a speed of 45 to 50 miles per hour[9] and that he was spotlighting streets prior to the accident, and his testimony that he was rendered unconscious following impact, were not persuasive. The commissioner also determined that the testimony of Allen and Dean as to the skid marks at the accident scene was credible because it was consistent with the field notes in the police report. The commissioner further determined that McLay's testimony was more credible than the testimony of Baron, that Artman's observations were persuasive and that Donaldson's assessment of the plaintiff's responses at the accident scene was more credible than Mashman's. The commissioner ultimately concluded that "the [plaintiff] has failed to sustain his burden of proof that the accident occurred as he alleges" and dismissed the claim. The plaintiff appealed to the board.

The board issued a memorandum of decision dated February 22, 2001. In affirming the commissioner's decision, the board stated that "where a claimant contends that an accident occurred in a specific manner, and the trial commissioner finds the claimant's explanation to lack credibility, we cannot say that the trial commissioner *must* find the accident to be compensable merely because it occurred while the claimant was on duty. Certainly in the instant case it is unclear whether the

---

[9] This was the speed indicated in the police report, not the plaintiff's testimony. See footnote 7.

claimant met the third requirement of 'in the course of' the employment provision; specifically, we do not know whether the accident occurred while he was reasonably fulfilling the duties of the employment or doing something incidental to it." (Emphasis in original.) The board stated that the plaintiff, although driving his employer's vehicle, "could have been engaged in various activities which would cause a trial commissioner to conclude that he was not reasonably fulfilling the duties of the employment or doing something incidental to it. The trial commissioner was not required to reach this issue, however, because he did not find the [plaintiff's] testimony to be credible regarding how the accident occurred." In sum, from the board's perspective, the plaintiff had not sustained his burden of proving a compensable injury, and it was not incumbent on the defendants to disprove the compensability of the accident.

The standard of review applicable to workers' compensation appeals is well established. "The commissioner is the sole trier of fact and [t]he conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . The review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is [obligated] to hear the appeal on the record and not retry the facts. . . . On appeal, the board must determine whether there is any evidence in the record to support the commissioner's findings and award. . . . Our scope of review of the actions of the [board] is [similarly] . . . limited. . . . [However,] [t]he decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed." (Internal quotation marks omitted.) *Mahoney*

v. *Bill Mann Tree Service, Inc.*, 67 Conn. App. 134, 136, 787 A.2d 61 (2001).

"The general rule to be applied in workers' compensation cases is that to be compensable an injury must (1) arise out of the employment and (2) occur in the course of employment. . . . Arising out of employment refers to the origin and cause of the accident. . . . To occur in the course of the employment, the injury must take place (1) within the period of employment, (2) at a place where the employee may reasonably be, and (3) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it. These three parts correspond to the time, place and circumstance of the accident." (Citations omitted; internal quotation marks omitted.) *Masko* v. *Board of Education*, 48 Conn. App. 515, 517–18, 710 A.2d 825 (1998); see also General Statutes § 31-275. "[T]he injured employee bears the burden of proof . . . ." (Internal quotation marks omitted.) *Dengler* v. *Special Attention Health Services, Inc.*, 62 Conn. App. 440, 447, 774 A.2d 992 (2001).

We also are guided by the "principles underlying Connecticut practice in [workers'] compensation cases: that the legislation is remedial in nature . . . and that it should be broadly construed to accomplish its humanitarian purpose. . . . The humanitarian and remedial purposes of the act counsel against an overly narrow construction that unduly limits eligibility for workers' compensation." (Citations omitted; internal quotation marks omitted.) *Gartrell* v. *Dept. of Correction*, 259 Conn. 29, 41–42, 787 A.2d 541 (2002).

We begin our analysis by noting that "a commissioner's recital of evidence or arguments is no substitute for findings of fact. *Grabowski* v. *Miskell*, 97 Conn. 76, 78, 115 A. 691 (1921) (discussing our Supreme Court's repeated injunction against reciting evidence in lieu of

fact-finding) . . . ." (Citations omitted; internal quotation marks omitted.) *DiBello* v. *Barnes Page Wire Products, Inc.*, 67 Conn. App. 361, 377, 786 A.2d 1234 (2001) (*Flynn, J.*, dissenting), cert. granted on other grounds, 260 Conn. 915, 796 A.2d 560 (2002) (appeal withdrawn June 26, 2002). Accordingly, to the extent that the commissioner's nine findings and conclusions do not incorporate the testimony cited in the eighty-two "findings of fact," that testimony does not constitute an evidentiary basis for the commissioner's ultimate conclusion that the plaintiff's claim should be dismissed.

After examining the nine findings and conclusions in the context of the relevant witness testimony, we conclude that the commissioner's determination that the plaintiff failed to sustain his burden that the accident occurred as he had alleged is not a reasonable inference to be drawn from the findings of fact. In his notice of claim, the plaintiff alleged that his injuries were the result of a "one car accident while on patrol." In the commissioner's second finding, he stated that "the [plaintiff], while on duty as [a police officer] of the borough of Naugatuck, was involved in a motor vehicle accident wherein his police cruiser struck a tree." Because the commissioner's finding logically suggested that the accident arose out of and occurred in the course of the plaintiff's employment, and because his remaining findings were unrelated to whether the accident arose out of and in the course of the plaintiff's employment, the commissioner's conclusion to the contrary had no reasonable basis in the facts.

All of the commissioner's other findings involved witness testimony that clearly was irrelevant to the issue in question. The testimony of Artman and Donaldson related to the plaintiff's mental condition following the accident. The testimony of Allen, Dean and McLay related to various characteristics of the plaintiff's vehicle, including its estimated speed as it approached the

curve in the road, the length and direction of the skid marks, and its position after impact. Although McLay's testimony that the plaintiff had not been spotlighting Whitney Place in the moments before the crash bore some relevance to the statutory criteria, that detail alone was insufficient to support the much broader inference made by the commissioner that the accident had not occurred in the course of the plaintiff's employment.

By contrast, the second finding of fact clearly supported an inference that the plaintiff's injuries had occurred in the course of his employment. See *Masko* v. *Board of Education*, supra, 48 Conn. App. 517–18. The finding specifically stated that the plaintiff was on duty, thus satisfying the first prong of the test that the injury take place during the period of his employment. See id. Also implied in the finding was that the plaintiff was in the borough of Naugatuck, thus satisfying the second prong of the test that the injury take place at a location where he might reasonably be. See id. The finding further indicated that the plaintiff was in his police cruiser, which satisfied the third prong of the test that the injury take place while he was reasonably fulfilling the duties of his employment. See id.

The second finding also supported an inference that the plaintiff's injuries arose out of his employment because the finding specifically indicated that the accident occurred while the plaintiff was driving his cruiser and while he was on duty. See id. Indeed, the defendants conceded in their brief that "it can be assumed that the incident arose out of" the plaintiff's employment. Accordingly, the commissioner's determination that the plaintiff had not met his burden of proving that the accident occurred as he had alleged was not a reasonable inference to be drawn from the subordinate facts.

Furthermore, in contrast to other cases, none of the commissioner's remaining findings suggested that the

plaintiff had *not* been engaged in employment related activities when the accident occurred. For example, in *Kish* v. *Nursing & Home Care, Inc.*, 248 Conn. 379, 381, 727 A.2d 1253 (1999), the claimant was injured while mailing a personal letter as she made a delivery that her employer specifically had instructed her not to make. In *Kolomiets* v. *Syncor International Corp.*, 252 Conn. 261, 263, 746 A.2d 743 (2000), the claimant was injured while returning to his home to retrieve his wallet and driver's license after making a work-related delivery. In both of those cases, the question before the commissioner was whether the claimants' activities constituted substantial deviations from their employment duties. Id., 266; *Kish* v. *Nursing & Home Care, Inc.*, supra, 382. Here, however, there were no factual findings to suggest that the plaintiff was engaged in activities unrelated to his duties.

In its memorandum of decision, the board observed that "we cannot say that the trial commissioner *must* find the accident to be compensable merely because it occurred while the claimant was on duty." (Emphasis in original.) The board went on to state that it was not clear whether the plaintiff had met the third prong of the test for determining if the accident had occurred in the course of his employment. We disagree.

As stated previously, the commissioner's second finding of fact did not indicate merely that the plaintiff was on duty; it also indicated that he was in Naugatuck and driving his police cruiser at the time of the accident. That finding, considered in its entirety, provided the basis for a reasonable inference that the plaintiff was fulfilling a duty of his employment when his vehicle struck the tree, namely, patrolling the streets of Naugatuck. That finding could not have provided the basis for the commissioner's conclusion to the contrary.

The board also stated, in support of the commissioner's decision, that the commissioner had made numerous findings of fact regarding the plaintiff's motive to crash intentionally into the tree. Although the board observed that it need not reach the issue of intentional misconduct because the commissioner's decision was supported by other findings, it nonetheless did so. After acknowledging that the defendants had failed to plead wilful misconduct as an affirmative defense during the hearing, it noted that such a defense was implied by the testimony of the defendants' witnesses. The board then concluded that the commissioner reasonably had inferred from the evidence and the findings that the accident had been caused by the plaintiff's intentional misconduct. We disagree with the propriety of the board's argument and its relevance to the case.

We first point out that the defendants conceded that they never raised the affirmative defense of wilful misconduct. In fact, the defendants stated in their brief to this court that they did not need to rely on such a defense to prevail in the underlying action. Second, contrary to the board's assertion that an implied defense of wilful misconduct properly was considered by the commissioner, General Statutes § 31-294c (b) provides in relevant part that "[w]henever liability to pay compensation is contested by the employer, he shall file with the commissioner . . . a notice . . . stating that the right to compensation is contested . . . and the specific grounds on which the right to compensation is contested. . . ." Thus, in the absence of formal notice, the defendants could not have relied on the affirmative defense of wilful misconduct even if it had wanted to do so. See *Russell* v. *Mystic Seaport Museum, Inc.*, 252 Conn. 596, 619–23, 748 A.2d 278 (2000) (employer waived right to contest where notice lacked specificity). Third, although the board referred to many of the eighty-two "findings of fact" as support for its

conclusion that the commissioner could have found for the defendants on the ground of wilful misconduct, many of those so-called "findings of fact," which consisted of witness testimony, had not been incorporated by the commissioner into his subsequent findings and conclusions, and thus could not have served as a basis for his decision. Last and most significantly, the commissioner expressly found that the plaintiff had been involved in a "motor vehicle *accident.*" (Emphasis added.) Black's Law Dictionary defines "accident" as "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated." Black's Law Dictionary (7th Ed. 1999). The finding of an accident thus excludes wilful misconduct as a cause of the crash. Accordingly, to the extent that the board may have regarded the affirmative defense of wilful misconduct as a secondary ground for affirming the commissioner's decision, such reliance was improper.

Because the only reasonable inference that can be drawn from the commissioner's second finding of fact is that the plaintiff's accident arose out of and occurred in the course of his employment, and because there were no other findings to the contrary, the commissioner's decision cannot stand.

The decision of the workers' compensation review board is reversed and the case is remanded to the board with direction to reverse the decision of the workers' compensation commissioner and for further proceedings consistent with this opinion.

In this opinion the other judges concurred.