CARL BRINSON *v.* FINLAY BROTHERS PRINTING
COMPANY ET AL.
(AC 22506)

Lavery, C. J., and Schaller and West, Js.

Argued January 16—officially released June 10, 2003

*Dominick C. Statile,* for the appellants (defendants).

*Leonard B. Bren,* for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. The defendants, Finlay Brothers Printing Company (Finlay Printing) and Atlantic Mutual Insurance Company, appeal from the decision of the workers' compensation review board (board) affirming the October 11, 2000 finding and award of the workers' compensation commissioner for the first district, in which the commissioner reversed the approval of a properly filed form 36,[1] and found that the plaintiff's fibromyalgia arose out of and in the course of his employment and restricted his work capacity to four hours per day. On appeal, the defendants claim that the board improperly affirmed the commissioner's finding

---

[1] A "[f]orm 36 is a notice to the compensation commissioner and the claimant of the intention of the employer and its insurer to discontinue compensation payments. The filing of this notice and its approval by the commissioner are required by statute in order properly to discontinue payments. General Statutes §§ 31-296, 31-296a, 31-300." (Internal quotation marks omitted.) *D'Amico* v. *Dept. of Correction,* 73 Conn. App. 718, 720 n.2, 812 A.2d 17 (2002), cert. denied, 262 Conn. 933, 815 A.2d 132 (2003).

and award because the commissioner improperly (1) reversed the approval of a properly filed form 36, (2) considered evidence that was not in existence at the time the form 36 was approved and (3) reinstated temporary partial benefits retroactive to July 7, 1997, when there was no evidence in the record documenting any fibromyalgia related work restrictions until March 26, 1999.[2] We affirm the decision of the board.

The following facts and procedural history are relevant to our resolution of the defendants' appeal. The plaintiff was employed as an offset stripper in the printing business by Finlay Printing beginning in May, 1993. His job involved careful, tedious work and required him to bend over a light table repeatedly to check the registration of multiple layers of film. On September 24, 1996, the plaintiff reported work-related injuries to his neck and lower back. The plaintiff's injuries were not the result of a particular traumatic event, but were an accumulation of neck and back problems caused

[2] The defendants also claim that the board improperly ignored the impropriety of a three year gap between the ruling approving the form 36 and the commissioner's decision, rendered after a formal hearing, to reverse the approval of the form 36. Specifically, the defendants assert that it was the plaintiff's duty to request a formal hearing, that the board has declared that such a request should be made as soon as possible after a ruling is made on the form 36 and that because the formal hearing was held some two and one-half years after the ruling approving the form 36, the plaintiff must have engaged in some impropriety. We decline to address that claim both because the issue does not appear to have been preserved properly for appeal; see *State* v. *Nunes*, 260 Conn. 649, 658, 800 A.2d 1160 (2002); *Norwich Savings Society* v. *Caldrello*, 38 Conn. App. 859, 864, 663 A.2d 415, cert. denied, 235 Conn. 927, 667 A.2d 553 (1995); and because the record is not adequate for our review. "Appellants bear the burden of furnishing this court with an adequate record to review their claims. Practice Book § 61-10; 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 60i, p. 386." *Putnam Park Associates* v. *Fahnestock & Co.*, 73 Conn. App. 1, 6–7, 807 A.2d 991 (2002). In the present case, there is no evidence before this court as to when the plaintiff requested the formal hearing or why there was a two and one-half year gap between the ruling on the form 36 and the formal hearing. The defendants, thus, have not provided us with an adequate record for review.

by his work. The defendants accepted the plaintiff's injuries as injuries that arose out of and during the course of the plaintiff's employment. After missing work because of his injuries, the plaintiff's treating physician, Thomas Barber, returned the plaintiff to work on a part-time basis beginning on February 10, 1997. At the request of Atlantic Mutual Insurance Company, Steven Selden, an orthopedic surgeon, performed an independent medical examination on April 1, 1997. Selden was of the opinion that the plaintiff could return to work full-time. On the basis of Selden's report, the defendants, on April 25, 1997, filed a form 36 seeking to discontinue the plaintiff's temporary partial benefits. After an informal hearing, Commissioner Michael S. Miles approved the defendants' form 36 on July 9, 1997, thereby discontinuing the plaintiff's temporary partial benefits.[3]

Meanwhile, on May 27, 1997, Barber reported that the plaintiff "continues to have significant pain," but nevertheless "suggested to [the plaintiff that] . . . he needs to get back to work full-time as best as possible." Barber gave the plaintiff a work slip to return to work eight hours a day starting June 1, 1997. By the middle of June, 1997, Barber had returned the plaintiff to four hour work restrictions because of the pain the plaintiff was experiencing.[4] Barber noted: "I am at a loss to do anything further with [the plaintiff] because he has had such severe pain, and we have done everything conservatively that we know how to do. I am going to send him over to the spine surgeons and see if they have

---

[3] The informal hearing was apparently held in April or May, 1997, but Commissioner Miles held his decision on the form 36 in abeyance until an opinion from the plaintiff's treating physician could be obtained.

[4] From mid-June, 1997, until December, 1999, when Finlay Printing laid the plaintiff off, it appears that he generally remained on work restrictions of four hours per day except for when he was absent from work altogether due to surgery or surgeries for carpal tunnel syndrome.

other options for him." Barber referred the plaintiff to Charles Kime, an orthopedic surgeon.

The plaintiff continued to seek medical treatment for his pain, and was referred to and examined by various physicians, including Kime, W. Jay Krompinger, an orthopedic surgeon, and Ralph Stocker, a board certified internist and rheumatologist. On May 15, 2000, a formal hearing was held before Commissioner Jesse M. Frankl (trial commissioner). On October 11, 2000, the trial commissioner issued a finding and award. In the finding and award, the trial commissioner determined that the plaintiff suffered from fibromyalgia, which arose out of and during the course of his employment. The trial commissioner also found that the fibromyalgia restricted the plaintiff's work capacity to four hours per day. The trial commissioner reversed the approval of the form 36, having found that the form 36 should not have been approved by Commissioner Miles and that the plaintiff should have been on temporary partial benefits from the time of the approval of the form 36. The trial commissioner ordered the defendants to reinstate the plaintiff's temporary partial benefits retroactive to July 9, 1997, the date of the approval of the form 36. The defendants appealed, and the board affirmed the decision of the trial commissioner. This appeal followed. Additional facts will be set forth as necessary.

We first set forth our standard of review in workers' compensation cases. "As a preliminary matter, we note that when a decision of a commissioner is appealed to the review [board], the review [board] is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts. . . . It is the power and the duty of the commissioner, as the trier of fact, to determine the facts. . . . [T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . ." (Citations omitted; internal quotation marks omitted.) *D'Amico* v. *Dept. of*

*Correction*, 73 Conn. App. 718, 723, 812 A.2d 17 (2002), cert. denied, 262 Conn. 933, 815 A.2d 132 (2003). "The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Kudlacz* v. *Lindberg Heat Treating Co.*, 70 Conn. App. 559, 562, 800 A.2d 560, cert. denied, 261 Conn. 927, 806 A.2d 1059 (2002).

"We will not change the finding of the commissioner unless the record discloses that the finding includes facts found without evidence or fails to include material facts which are admitted or undisputed." (Internal quotation marks omitted.) Id., 563. Similarly, "[t]he decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed." (Internal quotation marks omitted.) *Daubert* v. *Naugatuck*, 71 Conn. App. 600, 607, 803 A.2d 343, cert. granted on other grounds, 261 Conn. 942, 808 A.2d 1135 (2002).

I

The defendants first claim that the board improperly affirmed the trial commissioner's finding and award because he improperly reversed the approval of a properly filed and approved form 36. Specifically, the defendants argue that because Commissioner Miles acted within his discretion when he approved the form 36 on July 9, 1997, after the informal hearing, the trial commissioner could not reverse the approval of the form 36 after the formal hearing. That argument is without merit.

The parties do not dispute that General Statutes § 31-296 governs the method by which an employer may seek to discontinue benefits to an employee. See also General Statutes §§ 31-296a, 31-300. Section 31-296 pro-

vides in relevant part that "[b]efore discontinuing or reducing payment on account of total or partial incapacity . . . the employer, if it is claimed by or on behalf of the injured person that his incapacity still continues, shall notify the commissioner and the employee, by certified mail, of the proposed discontinuance or reduction of such payments, with the date of such proposed discontinuance or reduction and the reason therefor, and, such discontinuance or reduction shall not become effective unless specifically approved in writing by the commissioner.[5] The employee may request a *hearing* on any such proposed discontinuance or reduction within ten days of receipt of such notice. . . ." (Emphasis added.)

The board has "interpreted the term 'hearing' as used in § 31-296 . . . to mean a single emergency informal hearing that should be held as soon as possible after the claimant has objected to the Form 36." *Anguish* v. *TLM, Inc.*, 14 Conn. Workers' Comp. Rev. Op. 195, 197 (1995). The board also has made it clear, however, that the claimant is "entitled to challenge the Form 36 in a subsequent formal hearing."[6] Id.

The defendants here do not appear to dispute the form 36 procedure, as established by the board, or the plaintiff's right to request a formal hearing. Instead, the defendants' argument appears to be that once a commissioner approves a form 36 at an informal hearing, that commissioner's decision is subject to an abuse of discretion standard, and the trial commissioner at a

[5] The form 36 is the notice, required by General Statutes § 31-296, of the defendants' intention to discontinue compensation payments. The content of the form is set out by § 31-296. See General Statutes § 31-296; *Melendez* v. *Home Depot Inc.*, 61 Conn. App. 653, 655 n.3, 767 A.2d 743 (2001).

[6] In so doing, the board recognized claimants' due process rights to a formal hearing and its own need for a record to review on appeal. *Anguish* v. *TLM, Inc.*, No. 3437, CRB-7-96-9 (January 20, 1998), aff'd, 53 Conn. App. 241, 728 A.2d 1165, cert. denied, 250 Conn. 910, 734 A.2d 985 (1999).

formal hearing may not reverse the earlier approval of the form 36, as long as there was evidence to support the earlier decision.[7]

The defendants' argument is wholly contrary to the position of the board, which is that "[t]he initial granting of a Form 36 at an emergency informal hearing pursuant to *Stryczek* v. *State of Connecticut/Mansfield Training School*, 14 Conn. Workers' Comp. Rev. Op. [1995], *is not an appealable decision, as it does not create a record that can be reviewed.* . . . Instead, the initial ruling on a Form 36 may be challenged at a subsequent formal hearing, at which the previous ruling has no precedential weight. The issue is tried de novo." (Citation omitted; emphasis added.) *DeMartino* v. *L.G. DeFelice, Inc.*, No. 3524, CRB-04-97-01 (February 18, 1998), p. 4 n.2; see also *Covaleski* v. *Casual Corner*, No. 4419, CRB-01-01-07 (June 27, 2002).

As stated previously, the defendants do not dispute the form 36 procedure or the plaintiff's right to request a formal hearing. Moreover, at oral argument, the defendants conceded that the formal hearing before a trial commissioner is a de novo hearing. Given those facts and the fact that the defendants have not presented us with any support for their claim, we see no reason to interfere with what appears to us to be the board's reasonable interpretation of § 31-296, and the procedures for the approval and challenge of a form 36.[8]

---

[7] From the defendants' argument, it appears the defendants view the formal hearing as an "appeal" from the informal hearing in much the same way as a review by the board is an "appeal" of the decision of a trial commissioner.

[8] Moreover, we note that to our knowledge, there is no record of what transpired at the informal hearing. Without a record from that informal hearing, we do not actually know what occurred at the informal hearing or if, as the defendants claim, Commissioner Miles acted within his discretion in approving the form 36. The board was, therefore, entirely correct when it stated that the "emergency informal hearing . . . is not an appealable decision, as it does not create a record that can be reviewed." (Citation omitted.) *DeMartino* v. *L.G. DeFelice, Inc.*, supra, No. 3524, CRB-04-97-01, p. 4 n.2. The formal hearing is, thus, not an appeal from the informal hearing

We therefore conclude that the trial commissioner's reversal of Commissioner Miles' approval of the form 36 was not improper.

## II

The defendants next claim that the trial commissioner improperly considered evidence not in existence at the time Commissioner Miles approved the form 36 at the informal hearing. The defendants assert that Commissioner Miles based his decision to approve the form 36 on evidence that was before him at the time, including Selden's April 1, 1997 report. The defendants argue, essentially, that there was no evidence in existence at that time documenting the plaintiff's work-related fibromyalgia and that the trial commissioner, therefore, improperly considered such evidence at the formal hearing. In other words, the defendants suggest that at the formal hearing, the trial commissioner may consider only evidence that was available at the time the informal hearing was held. We disagree.

As stated previously and as conceded by the defendants, a formal hearing contesting the approval of a form 36 is, essentially, a trial de novo. The issue here is whether evidence may be presented at the formal hearing that was not in existence at the time of the informal hearing.[9] The board has answered that question in the affirmative. See Regs., Conn. State Agencies § 31-279-4; *Brinson* v. *Finlay Bros. Printing Co.*, No. 4307, CRB-01-00-10 (November 1, 2001); *Covaleski* v. *Casual Corner*, supra, No. 4419, CRB-01-01-07. We agree with the board.

in the same way as an appeal to the board is an appeal from the decision of a trial commissioner rendered after a formal hearing.

[9] It would again appear that the defendants view the formal hearing as an appeal from the informal hearing in much the same way as a review by the board is an appeal from a decision by a trial commissioner rendered after a formal hearing. Such is not the case. See footnotes 7, 8.

It is the clear intent of the legislature that workers' compensation hearings be conducted in accordance with the rules of equity and in a manner best calculated to ascertain the substantial rights of the parties. See General Statutes § 31-298. "The purpose of the [Worker's Compensation] [A]ct is to compensate employees for injuries arising out of and in the course of employment . . . ." (Internal quotation marks omitted.) *Stickney* v. *Sunlight Construction, Inc.*, 48 Conn. App. 609, 617, 711 A.2d 1193 (1998), aff'd, 248 Conn. 754, 730 A.2d 630 (1999). Common sense dictates that injuries are not always quickly or properly diagnosed and that some medical conditions are chronic. It is for those reasons that the legislature has provided that even at the appellate level, the board, in considering an appeal, may consider new or additional evidence that was not a part of the record before the trial commissioner, provided certain conditions are met.[10] See General Statutes § 31-301 (b); Regs., Conn. State Agencies § 31-301-9.

Similarly, we conclude that it is consistent with the legislature's intent for the trial commissioner to consider all evidence presented at the formal hearing, including evidence that may not have been available at the informal hearing, in making the determination as to whether the claimant is still entitled to benefits, that is, still suffering from an injury that arose out of and in the course of employment. We therefore conclude that the trial commissioner's consideration of evidence that was not in existence at the time of the informal hearing was not improper.

---

[10] The board may hear additional evidence or testimony provided that it is shown that the additional evidence is material and that there were good reasons for the failure to present it in the proceedings before the commissioner. See *Gillis* v. *White Oak Corp.*, 73 Conn. App. 523, 527–28, 808 A.2d 712 (2002), cert. granted on other grounds, 262 Conn. 936, 815 A.2d 136 (2003) (appeal withdrawn March 28, 2003).

## III

The defendants next claim that the trial commissioner improperly reinstated temporary partial benefits retroactive to July, 1997, when there was no evidence in the record documenting any fibromyalgia related work restrictions until March 26, 1999. In other words, the defendants argue that no physician related the plaintiff's fibromyalgia to his work restrictions until March 26, 1999, and that consequently, the earliest he could have received temporary partial benefits for the fibromyalgia was March 26, 1999.

The defendants' argument presumes that a physician had to have diagnosed the plaintiff's fibromyalgia and causally related it to the plaintiff's work restrictions before the plaintiff could recover temporary partial benefits for his work restrictions. That is not the law.

The trial commissioner is the trier of fact and, as such, has the power and duty to determine the facts. *Smith* v. *Connecticut Light & Power Co.*, 73 Conn. App. 619, 624, 808 A.2d 1171 (2002). "The trier [of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Jimenez*, 73 Conn. App. 664, 668, 808 A.2d 1190, cert. denied, 262 Conn. 929, 814 A.2d 381 (2002). "The commissioner must determine as a factual matter the causal relationship between a claimant's symptoms and a compensable injury." (Internal quotation marks omitted.) *Barron* v. *City Printing Co.*, 55 Conn. App. 85, 94, 737 A.2d 978 (1999). Medical testimony that there is a definitive causal connection between the claimant's symptoms and his incapacity is not required. *English* v. *Manchester*, 175 Conn. 392, 396–97, 399 A.2d 1266 (1978); *Poulick* v. *Radio City Restaurant*, 153 Conn. 410, 412, 216 A.2d 831 (1966). "It is enough if there is evidence from which the commissioner can properly

conclude that it is reasonably probable, or more probable than not, that the causal connection existed." (Internal quotation marks omitted.) *English* v. *Manchester*, supra, 397; *Poulick* v. *Radio City Restaurant*, supra, 412–13. Moreover, "it is clear that the lack of a definitive diagnosis does not preclude recovery under the Work[ers'] Compensation Act." *English* v. *Manchester*, supra, 398.

It is thus clear that the defendants' presumption is entirely incorrect. The trial commissioner was not required to have a physician causally relate the plaintiff's fibromyalgia to his work restrictions before awarding the plaintiff temporary partial benefits as long as there was evidence in the record by which the commissioner could determine, more probably than not, that the plaintiff's fibromyalgia (or his "injury") caused his work restrictions as far back as July, 9, 1997.[11]

What is left of the defendants' claim is, essentially, a sufficiency of the evidence claim. In other words, the defendants' claim, divorced of the presumption previously discussed, appears to be that there was insufficient evidence in the record by which the trial commissioner could find that the plaintiff's fibromyalgia was causally connected to his work restrictions prior to March 26, 1999. The defendants' argument is without merit.

The trial commissioner, in his finding and award, found the following facts: "On July 2, 1997, the [plaintiff] was examined by Dr. Charles Kime, an orthopedic surgeon. It was Dr. Kime's opinion that the [plaintiff] had an unusual pain syndrome which was not related to

---

[11] It is, of course, also true that there had to be evidence by which the trial commissioner could conclude that the plaintiff's injury (fibromyalgia) arose out of and in the course of his employment. See *Kudlacz* v. *Lindberg Heat Treating Co.*, supra, 70 Conn. App. 563. The trial commissioner found that the plaintiff's fibromyalgia arose out of and during the course of his employment. That finding is not contested on appeal.

any intrinsic spinal pathology. He likely had either a fibromyalgia or some other type of reactive disorder as the etiology of his unusual pain syndrome. . . .

"The [plaintiff] was referred to Dr. W. Jay Krompinger, an orthopedic surgeon for a second opinion. After having examined the [plaintiff] on September 2, 1997, September 10, 1997, September 19, 1997, October, 1997 and November 4, 1997 and reviewing [electromyograms] and X rays, it was Dr. Krompinger's opinion that the overall chronic diffuse pain was more consistent with a diffused arthritic process with an element of fibromyalgia. Dr. Krompinger referred the [plaintiff] to a rheumatologist. . . .

"The [plaintiff] was next examined by Dr. Ralph Stocker, a board certified internist and rheumatologist. Dr. Stocker diagnosed the [plaintiff's] neck and back pain as fibromyalgia. . . .

"It was Dr. Stocker's further medical opinion that the [plaintiff's] work activities were a significant factor in the causation of the fibromyalgia given his work description, continuing bending at the waist and concentration in a need for determining minute abnormalities and quality control. . . .

"Dr. Stocker also indicated in a report dated November 18, 1999, that the continued neck and shoulder pain from fibromyalgia is restricting the [plaintiff's] workday to four (4) hours a day. . . .

"After having been examined by Dr. Stocker, the [plaintiff] was again seen by Dr. Krompinger. In an examination dated March 26, 1999, it was Dr. Krompinger's opinion that the [plaintiff] had a symptomatic cervical spondylosis with an underlying element of fibromyalgia. It was also Dr. Krompinger's opinion that the [plaintiff] had a work capacity of four (4) hours a day due to this perceived discomfort."

The defendants do not claim that those findings of fact were unsupported by evidence or that the trial commissioner omitted material facts. Indeed, after reviewing the record, it is clear that those findings were supported by evidence. The defendants also do not dispute the trial commissioner's finding that the plaintiff suffered from fibromyalgia. The defendants, nevertheless, maintain that there is no evidence in the record by which the trial commissioner could find that the plaintiff's work restrictions were causally connected to his fibromyalgia, until the March 26, 1999 report from Krompinger.

Contrary to the defendants' argument, it is clear that there was sufficient evidence in the record by which the trial commissioner could find that the plaintiff's fibromyalgia was causally connected to his work restrictions prior to March 26, 1999. On May 27, 1997, the plaintiff's physician reported that the plaintiff "continues to have significant pain," but nevertheless gave the plaintiff a work slip to return to eight hour workdays "as best as possible."

By the middle of June, 1997, the plaintiff's physician had returned the plaintiff to four hour workday restrictions because of his severe pain. The plaintiff continued to seek medical treatment for his severe pain. Stocker first examined the plaintiff in December, 1997, and made a diagnosis of presumed fibromyalgia at that time. Stocker continued to treat the plaintiff. In a letter dated August 14, 1998, Stocker stated that he would date the onset of the plaintiff's fibromyalgia as being prior to the date when he first examined the plaintiff and that much of the plaintiff's "symptomatology, which was diagnosed as cervical strain or due to other causes, may have been consistent with the diagnosis of fibromyalgia." In that same letter, Stocker stated that "[i]n my opinion, to a reasonable medical probability, [*the plaintiff's*] *work activities were a significant factor in the*

*causation of the fibromyalgia,* given his work description, continued bending at the waist and concentration in the need for determining minute abnormalities in quality control. In my opinion *fibromyalgia has made his work restrictions necessary* and such restrictions (including the need for stretch breaks from work and if possible ergonometric reexamination of his workstation) . . . remain in force."[12] (Emphasis added.) The trial commissioner, in his finding and award, directly credited Stocker's opinion, stating that "[i]t was Dr. Stocker's further medical opinion that the [plaintiff's] work activities were a significant factor in the causation of the fibromyalgia given his work description, continuing bending at the waist and concentration in a need for determining minute abnormalities and quality control." The trial commissioner was within his discretion in accepting that evidence. "It [is] the province of the commissioner to accept the evidence which impress[es] him as being most credible and more weighty." (Internal quotation marks omitted.) *Ferrara* v. *Hospital of St. Raphael,* 54 Conn. App. 345, 349, 735 A.2d 357, cert. denied, 251 Conn. 916, 740 A.2d 864 (1999).

The defendants are, therefore, incorrect in claiming that there is no evidence in the record causally connecting the plaintiff's fibromyalgia to his work restrictions prior to March 26, 1999. We likewise conclude that the trial commissioner's decision, to award temporary partial benefits retroactive to July 9, 1997, was supported by evidence in the record because there was evidence by which he could infer that the plaintiff's

---

[12] Stocker did not specifically mention four hour workdays as one of the plaintiff's work restrictions. It is clear from the record, however, that the plaintiff, having been returned to eight hour workdays on June 1, 1997, was back on four hour work restrictions by mid-June, 1997, and thereafter. The trial commissioner was permitted to infer, on the basis of the letter and the other evidence before him, that by "work restrictions," Stocker also referred to the four hour per day work restrictions.

fibromyalgia caused his work restrictions as far back as July 9, 1997.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.